Fred H. Ferris,

*vs.*

Chic-Mint Gum Company, a corporation of the State of Delaware.

In the Matter of Claims of Wilmington Paper Box Company and L. A. Dreyfus Company.

*New Castle, June 27, 1924.*

Judgment against corporation, recovered in Court of Common Pleas before appointment of receiver, a transcript of which was not filed in office of Superior Court pursuant to 29 *Del. Laws, c.* 250, § 3763 K, § 11, and *Revised Code* 1915, § 4033, until after appointment of receiver, *held* not lien on real estate of corporation superior to rights of receiver.

Upon appointment of insolvency receiver, title to all the corporate property located in this State immediately passes to receiver by operation of law.

*Revised Code* 1915, § 1968 (*General Corporation Law*), limiting time within which receiver may dispute lien of judgment, is applicable only to receivers provided for by that law, and not to those appointed under Insolvency Act (*Revised Code* 1915, § 3883).

Failure of receiver, to whom title to corporate property has passed by operation of law, to file copy of his appointment and qualification in office of recorder of deeds, does not affect his title to property, so as to give judgment, transcript of which was filed after his appointment, a superior lien.

In Delaware the rule of law which regards a day as a single point of time, not divisible into periods, is recognized.

Where, pursuant to 29 *Del. Laws, c.* 250, § 3763 K, § 11, and *Revised Code* 1915, § 4033, transcript of judgment against corporation was filed in office of Superior Court on same day that receiver was appointed, court, in determining rights of receiver and judgment creditor, is unwarranted in disregarding unnecessary notation to effect that transcript of judgment was filed at 4:30 p.m., though failure to disregard same operated to give receiver superior right.

Though evidence aliunde the record is inadmissible to negative the consequences of the fiction by which a day is regarded as a single point of time, when facts appear of record showing the result of the fiction to be contrary to the true fact, the former is not allowed to prevail.

PETITION OF RECEIVER FOR DISALLOWANCE OF CLAIM OF LIENS. Two judgment creditors claim liens on the proceeds of sale of the real estate of the insolvent corporation. They are Wilmington Paper Box Company and L. A. Dreyfus Company. When the opinion was filed at an earlier stage of the case defining the order of distribution of the proceeds from the real estate, (*ante p.* 232) it was assumed by the Chancellor that the judgments obtained by the claimants referred to had been obtained and liens on the real estate thereby secured at a time prior to the appointment of the receiver. This assumption was founded on the course taken by the solicitors at the argument. The receiver now files petitions against the allowance of the two claims in question as liens ahead of the administration expenses, on the ground that they do not constitute liens.

*David J. Reinhardt*, for the receiver.

*Franklin Brockson*, for the Wilmington Paper Box Company.

*William Saulsbury*, for the L. A. Dreyfus Company.

THE CHANCELLOR. It appears that I was under a mistaken apprehension when in the opinion heretofore filed it was assumed that the judgments in question were admitted to be liens on the real estate antedating the appointment of the receiver. The present petitions present the true state of affairs with respect to these two judgments and the request is now made that the final order for distribution (not yet signed) shall be so phrased as to subordinate the judgment claims to the payment of the administration expenses. The two claims are not similarly situated, and they will therefore be disposed of separately.

First as to the claim of Wilmington Paper Box Company. The claimant recovered judgment against the Chic-Mint Gum Company in the Court of Common Pleas in New Castle County for $211.62 on November 24, 1922. This judgment did not constitute a lien on the real estate of the defendant. *29 Laws of Dela-*

*ware, c.* 250, 3763 *K*, § 11.   The language of that section is as follows:

"All civil judgments rendered by the said court shall be entered by the clerk thereof in a judgment docket, which shall be properly indexed.   Said judgment shall not be a lien upon the real estate, but a transcript thereof may be filed in the office of the Superior Court, in and for New Castle County, in the same manner now prescribed by law for filing transcripts of judgments rendered by justices of the peace."

The law with respect to the liens of judgments obtained by filing transcripts of judgments before justices of the peace provides (*Revised Code* 1915, § 4033) that the prothonotary of the Superior Court shall enter the same in his judgment docket—

"with the true date of such filing and entry; and such judgment, so transferred, shall, from that date, become and be a lien on all the real estate of the debtor in the county, in the same manner and as fully as judgments rendered in said Superior Court are liens."

The plaintiff in the judgment filed a transcript thereof in the office of the prothonotary for New Castle County on December 1, 1922.   A receiver, the petitioner, was appointed for the defendant and qualified on November 24, 1922.   At the time of the appointment of the receiver the judgment now in question had not therefore become a lien on the real estate.   Nor could it thereafter become a lien because under the provisions of *Section* 3884 of the *Revised Code of* 1915 title to all the property of the insolvent corporation, real, personal or mixed, of whatsoever nature, kind, class or description, and wheresoever situate except real estate outside of the State, became vested in the receiver upon his appointment and qualification by operation of law without any act or deed. When the plaintiff in the judgment undertook to perfect the same into a lien by filing the transcript on December 1, 1922, title had passed out of the defendant into the receiver appointed by this court.   There was no title left in the defendant to which the judgment could attach as a lien.   What the solicitor for the plaintiff in the judgment says on his brief about the right of a creditor to proceed to judgment after the appointment of a receiver unless restrained by the appointing court, has no pertinency to the question.   The right to obtain the judgment may be conceded for

present purposes. The question of when if ever it attached as a lien to the real estate formerly held by the defendant is not affected thereby. It is very clear under the provisions of the statute referred to that the title of the defendant had gone before the entering of the judgment.

The solicitor for the Wilmington Paper Box Company contends that the time within which the receiver might have disputed the lien of the judgment has expired, and he is now estopped from objecting to the payment of the judgment out of the funds realized from the sale of the real estate. In this connection *Section* 1968 of the *Revised Code of* 1915 is cited. That section is a part of the *General Corporation Law,* and I conceive that the receivers therein referred to are such receivers as that law provides for. The receiver in this case was appointed under the insolvency statute (*Revised Code of* 1915, *Section* 3883).

Another contention made is that under the provisions of the section by which title is transferred by operation of law to the receiver (above referred to) it is provided that the receiver shall within twenty days from the date of his appointment file in the office of the recorder of deeds in each county of the State in which any real estate of the corporation may be situate a certified copy of his appointment and qualification. It is alleged that the receiver has never complied with this requirement. Assuming that he has not, I can discover nothing in the section which indicates it to be the intent of the Legislature that failure to file the certificate shall arrest the transfer of title to him by operation of law. It doubtless was the purpose of the provision to provide for a lodgment in the offices where records of the transmutation of land titles are recorded, some evidence of the devolution of title in cases where receivers of corporations have been appointed. The section does not as in the case of the recordation of deeds prescribe the consequences which follow from a failure to record the same within the specified time.

Second, with respect to the claim of the L. A. Dreyfus Company. What has already been said disposes of some of the contentions raised by the solicitor for the Dreyfus Company. Only the distinguishing features of this claim will be noticed.

The judgment in this case was as in the other obtained in the

Court of Common Pleas. It was recovered on November 14, 1922. The receiver was appointed and qualified, as before noted, on November 24, 1922. The transcript of the judgment was, however, not filed in the Superior Court until November 24, 1922, the day of the receiver's appointment. In entering the judgment, the prothonotary noted thereon the time of its entry as thirty minutes after four o'clock in the afternoon. He was required to enter this judgment as in cases of transcripts from justices of the peace. The statute applicable to justice of the peace transcripts in terms requires that the prothonotary shall enter the judgment with "the true date of such filing," making no requirement as to the hour and minute. It is the practice in all the counties of the State for the prothonotary to note the hour and minute of entering judgments on transcripts from justices of the peace. Whether this practice is required to be followed by the statute, it is unnecessary for me to decide. In view of what follows it will appear that the exact time of entering the judgment as appears from the judgment docket must be accorded full effect regardless of whether the prothonotary in noting the time went further than the exact terms of the statute required.

The Dreyfus judgment presents a case of rivalry between an alleged judgment lien and a conveyance of title, both bearing date the same day. In this State the rule of law is recognized which regards a day as a single point of time not divisible into periods. *Hollingsworth v. Thompson,* 5 *Har.* 432; *In re Lawson,* 7 *Boyce,* 338, 106 *Atl.* 288. In the former case it was held that a judgment acquired its lien prior to a mortgage. This ruling was based on the fact that the law limited the time of the mortgage lien from the precise minute of its recordation as noted by the recorder in obedience to the requirement of the statute in that behalf, whereas a judgment obtained by confession acquired its lien from the day of its entry. In this state of the law the legal fiction of the day's indivisibility came to the aid of the judgment and therefore placed it in point of time ahead of the mortgage which because of the statute could borrow no aid from that source. This rule was given a new application in the case referred to in 7 *Boyce,* and in an early criminal case the same rule was recognized in determining the age at which a defendant attained his majority

so as to entitle him to vote at an election. *State v. Clarke, 3 Har.* 557. On principle I can see no reason why the time of the appointment of the receiver in this case should not be determined by the same rule of the day's indivisibility. The receiver having been appointed on the 24th of November and the record showing nothing as to the precise hour of his appointment, it is to be regarded in law as having taken effect at the beginning of that day. Therefore title passed to the receiver prior to the obtaining of any lien by the filing of the transcript from the Court of Common Pleas unless the notation of the precise hour and minute on the judgment docket is to be regarded as though never made.

Should this notation be so disregarded? The reported cases present many instances of rivalries of various kinds between conflicting claims against real estate. Where the common law fiction prevails, there is no difficulty in adjusting the conflicting claims of judgments entered on the same day. In such cases the principle of *pro rata* application of the funds obtained from sale of the burdened land furnishes an easy solution. In those cases, however, where the conflict is between a judgment lien and a conveyance, no such principle can be applied for the manifest reason that either the one or the other must give way. They cannot exist together. In such cases conflicting rules have been adopted by the various courts. The case now before me would fall among these conflicting rules if it were not for the fact that the judgment has by reason of the notation made by the prothonotary acquired a definite position in the day at some sixteen hours after its commencement. In the case of *In re Lawson, supra,* the Superior Court of this State refused to admit testimony to show the precise time of entering the judgment there involved. The proferred testimony was offered for the purpose of relieving the judgment from the consequences which flow from the fiction of the day's unity. In rejecting the evidence the court based its ruling on the ground of public policy and the prevention of litigation. While in some instances the operation of the fiction may result in injustice, yet this State adheres to the common law conception, viz., that where the fiction is properly applicable its certainty is more desirable as a matter of public policy than the risk of the dangers which inhere in its rejection. And so, evidence aliunde the record is not ad-

missible to negative the consequence of the fiction. But it never has been held in this State, nor elsewhere so far as I have been able to discover, that if anything appears in the record itself which discloses the result of the fiction to be contrary to the true fact, the former must nevertheless prevail over the latter. Indeed the contrary was expressly held to be the rule at common law. See *Berry v. Clements*, 9 *Humph.* (*Tenn.*) 312. Applying this rule here, the evidence disclosed by the record of the judgment itself is that if the legal fiction of the day's unity be applied to the judgment, the result will be contrary to the truth and, such being the case, the fiction must give way.

The case, therefore, comes down to this, that the transfer of title to the receiver must be regarded as dating from the beginning of the 24th of November, and the judgment must be regarded as taking on the qualities of a lien from 4:30 p. m. of the same day. The judgment, therefore, never attached to the land whose proceeds are now sought to be charged with it. There is no evidence showing at just what hour of the day the receiver was appointed and qualified. I can make no presumption with respect thereto except what the rule dictated by the legal fiction referred to and accepted in this State requires. I may say that according to my recollection of the case at the time of the filing of the bill, some satisfaction is derived from the fact that what actually took place is not at variance with what the fiction of the unity of the day would determine. This, of course, is not the ground for the conclusion reached, which rests on the principles of law hereinbefore accepted.

Let the order provide that the judgment creditors shall be subordinated to the costs of administering the estate. If this proves to the personal advantage of the receiver, it is no more than generally happens where creditors at large cannot be paid in full. There is no danger of the receiver's being overpaid for his time and labor in performing the duties of his office.