The objection which the defendant makes to the complainant's title hinges upon the validity of the title conveyed by the sheriff in the foreclosure proceedings as against the deed delivered by Richardson to the Underwriters Realty and Mortgage Company. Both the mortgage and deed were recorded on the same day. The mortgage was noted on the record as recorded at 11:35 A. M. of that day (the statute, Sec. 1380, Revised Code 1915, quoted infra, required this); but no notation of the hour of recording was noted upon the record of the deed, the statute requiring none.
The defendant contends that there being no notation of the exact time when the deed was *Page 273 
recorded, the law, disregarding fractions of the day, will in obedience to the familiar fiction consider the deed as having been recorded from the first moment of the day, and such being the case, the defendant contends, the deed from Richardson to the Underwriters Realty and Mortgage Company took prior rank over the mortgage of Richardson to Cohen, recorded at 11:35 A. M. of that day, and the title under that deed could not therefore be divested by foreclosure proceedings under the mortgage.
In reply to this contention it is urged by the complainant that the mortgage, being one to secure a portion of the purchase money, is by virtue of the statute entitled to the status of a valid lien even though it be conceded that the deed executed by the mortgagor was, either because of the fiction or as a matter of fact, delivered and recorded before the mortgage.
The statute upon which this contention is based was approved March 15, 1915, and is found in 28 Del. Laws, Ch. 223. It is as follows:
"If lands or tenements be sold and one or more mortgages on the same, or any part thereof, be made by the purchaser to the vendor for securing the purchase money or any part thereof, and if such mortgage or mortgages be recorded within five days after the deed conveying such land or tenements from such vendor to such purchaser shall be recorded, the lien of said mortgage or mortgages on said lands or tenements or any part thereof shall have preference to and priority over any judgment against the mortgagor, or any other lien created or suffered by him, although such judgment, or lien, be of a date prior to said mortgage or mortgages. And as between two or more such purchase money mortgages on the same land, they shall have priority and preference according to the times that they are severally recorded in the proper office. Two or more such mortgages, recorded at the same time, shall have no preference or priority as between themselves."
This section is in substitution for an earlier provision found in Sec. 3224, Revised Code 1915, and alters the earlier provision in the following among other respects — the earlier provision allowed thirty days from the making of the purchase money mortgage for its recordation, whereas now only five days is allowed and this runs not from the making of the mortgage as formerly but from the date of the recording of the deed to the vendee-mortgagor.
In so far, therefore, as the time of the recording of the mortgage in question is concerned it was placed upon the record within the five day period. Hence it enjoys the preference which the quoted section gives. But what is that preference? By the terms of the section (and in this respect the statute is the same as formerly) it is "over any judgment against the mortgagor, or any other lien created or suffered by him" regardless of date. There is a marked distinction between this language and that which is found in another portion of the law dealing with the recording of instruments, where it is provided that unless a deed is recorded within three months it "shall not avail against a subsequent fair creditor, mortgagee or purchaser for a valuable consideration unless," etc. Sec. 3218, Revised Code 1915. See also Sec. 3219, Revised Code 1915. Like deeds duly recorded in the prescribed time, purchase money mortgages if recorded within the proper period are preferred by the express language of the statute against judgment and mortgage creditors; but unlike deeds, purchase money mortgages are not allowed by the language of the statute to enjoy a priority over subsequent purchasers for value. In this condition of the statute law, it is difficult to see how the purchase money mortgage from which the complainant derives his title can, if the deed to Underwriters Realty and Mortgage Company was in fact recorded ahead of the mortgage, be preferred thereto by reason of anything found in the quoted section dealing with purchase money mortgages. If that section included subsequent purchasers upon a valuable consideration among those against whom the purchase money mortgage could claim priority, in analogy to the provisions concerning the rights of grantees in deeds, the protection which the complainant claims by virtue of the statute would then be a secure one notwithstanding the deed was entered first, assuming of course that the grantee in the deed gave a valuable consideration.
From the foregoing it results that the complainant cannot call to. his aid against the grantee in the deed, the protection which the statute affords to the holder of a purchase money mortgage.
This being so, whatever advantage the complainant has by reason of the recording of the purchase money mortgage is derived, not from the particular section dealing with the recordation of such instruments, but from the sections dealing with the recording of mortgages generally. Those sections are published in the Code of 1915, as follows:
"3222. Sec. 26. * * * A mortgage, or a conveyance in the nature of a mortgage, of lands or tenements, shall have priority according to the time of recording it in the proper office, without respect to the time of its being sealed and delivered, and shall be a lien from said time of recording it, and not before."
"1380. Sec. 10. * * * When a deed, or other writing proper to be recorded, is lodged in the Recorder's office, he shall note upon it the day, month and year, and in case of any mortgage, the hour and minute of its being so lodged; * * * and the recording shall take date from the time it was lodged in the office. * * "
The mortgage in question, therefore, notwithstanding it was a purchase money mortgage, acquired its quality of a lien from *Page 274 
11:35 A. M. of the day of its recording. Now at that minute of the day, had title passed out of the mortgagor to the Underwriters Realty and Mortgage Company by virtue of the deed? The deed was dated September 6, 1917. Deeds of course are effective from the date of delivery. Littleton v. Johnson, 3 Boyce, 97, 81 A. 47; Doe ex dem. Guest et al. v. Beeson, 2 Houst, 246; Smith et al. v. May, 3 Pennewill, 233, 50 A. 59. There is nothing to show in this case when the deed was delivered. In the absence of such showing the date of the deed is presumed to be the date of its delivery. Buker v. Carroll et al., 1 Pennewill, 559, 42 A. 986. The delivery date of this deed was then September 6, 1917, and, its recordation having been delayed for over three months, the record of it cannot by virtue of the statute (Secs. 3218, 3219, Revised Code 1915) acquire any effect anterior to the time of its actual entry.
Both the deed and the mortgage, therefore, must so far as their respective rights to priority are concerned stand upon the actual record of entry without the aid of any statutory provision by which either can be transposed by relation to a prior time.
This brings us to a consideration of the question raised by the defendant, viz., the two instruments standing on the records as entered the same day, the mortgage at a precise hour and moment of that day and the deed generally, will the law, in the absence of statute, apply the fiction of the day's indivisibility to the act of recording the deed and refer it to the beginning of the day? The fiction of course cannot apply to the recording of the mortgage because of the statutory notation of time. If it can be applied to the recording of the deed, then of course it will follow that title had passed out of the mortgagor before the mortgage became a lien and the foreclosure sale under that mortgage could not transfer title to the complainant's predecessor.
The next question to be considered, therefore, is whether the law will regard the deed as having been recorded at the outset of the day. In answering this question I confess I am embarrassed by the case of Ferris v. Chic-Mint Gum Co., 14 Del. Ch. 270, 125 A. 343. In that case, applying the rule laid down in earlier Delaware cases in the Superior Court where it was held that the fiction of the day's indivisibility would place a lien entered on one day (exact time not noted) ahead of another lien entered on the same day at an exactly noted hour and minute, I held that where the rivalry was between a conveyance by operation of law to a receiver, the exact time thereof being undisclosed, and a lien of a judgment entered at 4:30 P. M. of the same day, the former was to be regarded as having anteceded the latter. It is undoubted that the application of the fiction of the day's unity to rivalry between liens, as in the Superior Court cases, is in many in-stances calculated to work an injustice; and accordingly cases are to be found decided in other jurisdictions where, in the interest of justice, the fiction to which our courts have adhered has been rejected. The possibilities of injustice are so great and the opportunities for the successful prosecuting of deliberately designed frauds are so invitingly afforded, if the fiction is extended to contests for priority between conveyances on the one hand and liens on the other and allowed in such cases to prevail against the truth, that the ruling made by me in the case of Ferris v. Chic-Mint Gum Co., supra, ought not to be followed. Fortunately no injustice was done by the decision in that particular case because the fiction accorded with the fact. The occasion is now taken, however, to state that the ground upon which the decision proceeded in that case is rejected. Accordingly, where the contest is between a conveyance on the one hand and a lien on the other, both entered on the same day and the sole question is as to which was recorded first in point of time, courts should, if the interests of justice so suggest, require the fiction of the day's indivisibility to yield to the truth; and proof outside of the record, where it is silent, should be admitted to show the fact of the exact time of entry. Gallagher v. True American Publishing Co., 75 N. J. Eq. 171, 71 A. 741, 138 Am. St. Rep. 514; Murfree v. Carmack, 4 Yerg. (Tenn.) 270, 26 Am.Dec. 232; Metts v. Bright, 20 N. C. 311, 32 Am. Dec. 683; 17 R. C. L. 610.
Since deciding the Chic-Mint Gum Case, supra, I have learned that Chancellor Nicholson in an unreported case in the Orphans' Court held in Kent County made a ruling apparently in harmony with this conclusion. I refer to the case of In re Partition of Thomas Brown's Lands, Orphans Court Record K, 281-292. The matter arose upon a petition to ascertain the priority of liens against shares of parties entitled as parceners. A judgment was entered aganist Sarah J. Hopkins on April 1, 1895, at seven o'clock P. M. On the same day, a deed was executed by her and recorded conveying all of her interest in the share to which she was entitled. There was thus a contest for priority between a judgment and a deed, both entered the same day, the one at a precise moment and the other generally. Though the record is silent upon the fact, yet, I am advised, the Chancellor heard evidence upon the question of just when during the day the deed was recorded, and, having found it to have been before the judgment was entered, decreed the judgment to be no lien. Whether the propriety of admitting evidence outside of the record of the deed to show the exact time of its registration was debated before the Chancellor, I do not know. The case is referred to simply for the purpose of showing that on at least one occasion, and the only occasion in this State so far as I am informed before the *Page 275 
Chic-Mint Gum Case arose, the Court, where the contest was between a conveyance and a lien by judgment, has resorted to evidence aliunde the record of the deed to ascertain the true time from which its recording dates.
In view of the foregoing, it follows that the defendant cannot insist that by fiction of law the deed by the mortgagor must be conclusively regarded as having been recorded at the beginning of the day and therefore ahead of the mortgage through which the complainant's title is derived. Before the question of priority can be determined, therefore, the true facts as to time of day when the respective instruments were recorded must be ascertained.
But there is no way from which this can be done on the state of this record. The case was submitted on bill and answer. Accordingly no evidence was produced; and from the bill and answer nothing can be deduced as showing what the facts as to times of entry are. Assuming that it would be proper to indulge a presumption, in the absence of evidence, that what the rule of the day's fictional entity suggests should prevail (which I do not decide), yet such presumption should prevail only against the parties to the cause. The grantee in the deed is not a party and cannot therefore be bound by the decree. A decree for the complainant, therefore, would leave the grantee in the deed free to assert against the title forced on the defendant, whatever rights it might have by reason of a claimed priority of recording. There thus being a doubt as to the complainant's title because of a debatable fact, the bill which seeks to force that title upon the defendant, ought to be dismissed. Brown v. Davis (Del.Ch.) 131 A. 142.
There is another question of fact which if it could be conclusively resolved by a finding, would make it possible to adjudicate upon this title. I refer to this. If the fact was that when the grantee in the deed, the Underwriters Realty and Mortgage Company, took title it knew the Cohen mortgage had been previously executed and delivered, the mortgage would be superior even though its recording was subsequent to that of the deed. The object of the registry laws in providing for the recordation of an instrument is to afford "notice of its contents, and of all rights, title, or interests, legal or equitable, created by or embraced within it, to every person subsequently dealing with the subject matter whose interest or duty it is to make a search of the records." 2 Pomeroy's Equity Jurisprudence, 4th Ed. § 649. Now if notice, either actual according to all the American authorities or constructive according to some of them, is received by a subsequent purchaser or encumbrancer who has obtained the first record, of a prior instrument, though unrecorded, the object which the recording acts aim to attain has been otherwise achieved and in such cases the subsequent purchaser or encumbrancer, notwithstanding he is prior on the record will nevertheless be held subsequent in point of right. For a full discussion of this subject reference may be made to 2 Pomeroy's Equity Jurisprudence, 4th Ed. §§ 659-665, and the doctrine is stated by the author in § 659 to be applicable in this country both at law and in equity.
Now whether the grantee in this case, assuming the deed to have been first upon the record, had at the time of its execution and delivery such notice of the antecedently executed mortgage as to subordinate the deed to the mortgage, it is impossible in the absence of proof, to say. The complainant argues however that the court should indulge the presumption that the grantee in the deed did in fact possess such notice. I know of no principle of law which would justify such a presumption. The fact of notice must be proved to the point of actuality or, according to some authorities, by a showing from which constructive notice can be deduced. The only fact appearing from the bill and admitted by the answer which the complainant refers to as showing the grantee in the deed must have had notice of the mortgage is this — that the judgment obtained upon the scire facias sur mortgage shows that fifty dollars was at some time paid on account of the debt, that because only one day intervened between the delivery of the mortgage and the delivery of the deed, the grantee in the deed must have made the payment and if so, must have had notice of the mortgage prior to taking the deed. I cannot accept that conclusion. The grantee in the deed, to be sure, may have made the payment; but, on the other hand, the mortgagor may have made it. If the latter made it, nothing with respect to notice can be thereby fastened on the grantee; and if the former made it, the payment may have been made long subsequent to the taking of title under a mistaken understanding as to legal liability, in which case the question of antecedent notice would still be left in the realm of debate.
On the ground, not that the complainant's title is found to be bad, but on the ground that it is not on the present showing sufficiently demonstrated to be good, the bill will be dismissed with costs on the complainant. functions under its immediate control, that it was the duty of the municipal authorities to establish and maintain institutions of like character to those of the agencies concerned, and, inasmuch as no such institutions had been established by the city, it was competent for it to exercise the taxing power and apply the funds thus raised to enable or assist others to do what the city had been authorized but failed to do. And, with respect to this contention, the court held that the powers given the city had been given in contemplation of performance by the city, and could not be delegated. "That the city has ample power delegated to it," said the court, "and that it is a duty, to provide for the foundlings, the insane, the indigent infirm, * * * is beyond all question; but whatever provision may be made must be under the control and subject to the supervision of municipal authority. Being an important public trust, it cannot be delegated beyond the power and discretion of those to whom it is confided." The decision was one construing the legislative authority given, and, as the trial judge in this case says, it seems clearly to have proceeded upon an assumption that the Legislature might give authority for the delegation of function and the payment of the funds contended for, and found merely that this authority had not been given in the then existing statutory law. Long before, it had been decided that public funds might under proper legislative authority be appropriated to aid private agencies performing services to the community which were public in nature. University of Md. v. Williams, supra; St. John's College v. State, 15 Md. 330. And from the beginning of the state government it had been the policy and practice to accomplish public purposes indirectly by such means; and all Constitutions promulgated since the beginning had been framed unquestionably in full knowledge of this policy and practice, and in none was anything inserted or changed to interfere.
The court, in St. Mary's Ind. School v. Brown, did not therefore deny the validity of municipal appropriations to private agencies under specific legislative direction, and for the appropriation now being consideredwe have a specific legislative direction. We see no constitutional objection to it, once we accept the purpose to be furthered as a public one. Not only has it long been the policy of the state to further public objects by such means, but it still is so, and no question or doubt of the legal correctness of this policy has ever before been raised. There is a governmental board of state aid and charities for the supervision of such expenditures, and its report, filed in this case, lists over one hundred private agencies aided, including a large number of hospitals of various kinds. See Snowden v. Balto. Gen. Dispensary, 60 Md. 85. And in this long-established policy and practice, not interfered with by any constitutional change, and generally accepted for so long a period without question or doubt, the appropriation now being considered would seem to have amply sufficient support as a valid one for a public purpose. See State v. Mayhew, 2 Gill, 487, 497; Tyson v. State, 28 Md. 577, 587; Trustees of Catholic Church v. Manning, 72 Md. 116, 130, 19 A. 599; Levin v. Hewes,118 Md. 624, 641, 86 A. 232; Arnreich v. State, 150 Md. 91, 106, 132 A. 430. It need hardly be mentioned that, if the policy may constitutionally be followed by the state, the city of Cumberland, which is an agency of the state, may be authorized and directed to follow it. Mayor, etc., of Baltimore v. State, 15 Md. 376, 462, 74 Am. Dec. 572; Daly v. Morgan,69 Md. 460, 467, 16 A. 287, 1 L.R.A. 757.
 Decree affirmed, with costs to the appellees. *Page 697