In the Matter of the Construction of the WILL of MARGUERITE B. PUTNEY, Deceased, and the Distribution of Escrow Funds Held by David B. Coxe, Jr., and Thomas H. Wingate, as Escrow Agents for Ellison W. Putney and Marguerite B. Putney, Deceased, and the Distribution of Other Moneys and Personalty Held by Marguerite B. Putney and Due and Owing Ellison W. Putney and Marguerite B. Putney, Deceased.

*New Castle, August 2, 1965.*

*Thomas H. Wingate,* Wilmington, for petitioner, Ellison W. Putney.

*William T. Lynam, III,* of Wilson & Lynam, Wilmington, for Thomas W. Putney, executor.

*Vincent A. Bifferato,* Wilmington, guardian ad litem, for Hugh L. Putney.

SEITZ, Chancellor: Ellison Putney ("plaintiff") filed a complaint for instructions concerning the will of his late wife, Marguerite B. Putney ("testatrix"). He also sought a determination of the ownership of certain bank accounts and other property.

The executor and son, Thomas Putney ("executor") filed an answer and a cross-petition seeking the same basic relief. A guardian ad litem was appointed to and did represent Hugh L. Putney, one of

testatrix' children, who is incompetent. Another son, Hilton Putney, while served by publication, did not appear. This is the decision after final hearing.

It appears that since service and the hearing in this matter, Hilton has been adjudged mentally ill by a California court. The parties represent that Hilton's most beneficial position is already being asserted except for a possible one-fourth interest which the testatrix might have had in any money in banks. As to such interest, I shall consider it raised and dispose of it on the merits.

In order to understand the areas of dispute it is first necessary to trace the relationship between the testatrix, her husband and their property holdings. This must be done in order that the property in dispute may be identified and legally categorized.

Plaintiff and testatrix were married in 1933. From about 1941 they lived on an 84 acre tract of land in Millcreek Hundred, owned by R. D. Ward and plaintiff as tenants in common. Ward, who is plaintiff's stepfather, and plaintiff were also partners in a business known as Wilmington Blueprint Service. While the precise date is in dispute it is the fact that some time in 1959 or early 1960 serious marital problems arose between plaintiff and the testatrix. This culminated in their separation on March 15, 1960. After the separation the testatrix continued to reside on the Millcreek Hundred property.

Prior to the separation, negotiations had been underway for the sale of a part of the Millcreek Hundred tract to a developer. These negotiations crystallized in May of 1960, when R. D. Ward and plaintiff conveyed 64 odd acres of the tract to the developer, their wives joining in the deed. At this time the testatrix' only possible claim on this property was an inchoate dower interest in an undivided moiety. However, at the settlement, one of the vendee's checks for their part of the purchase price was made payable to plaintiff and the testatrix. Moreover, a purchase money mortgage for the balance was given by the purchaser to Ward and wife, and plaintiff and wife, as mortgagees. The Putneys' settlement check was deposited in the family joint checking account and later drawn on by both parties and expended in large part on the remodeling of another property. A dispute concerning these drawings is resolved later herein.

Almost a year later, when the mortgage payment became due, the settlement sheet was again so drawn that the testatrix was to be paid part of the mortgage proceeds. At this settlement plaintiff objected. The result of the quarrel that followed was the testatrix' refusal to sign the necessary papers unless an escrow account was created. This procedure was acceded to by plaintiff and the attorneys for the parties became the escrow agents. The agreement creating the escrow account provided that the funds were "* * * to be held in said account until distribution can be agreed upon by the parties within sixty days or thereafter as a court of competent jurisdiction shall decide its distribution". Neither party could withdraw funds without authorization from the other. Although money has been drawn out by joint action, a substantial sum remains in the escrow account and its ownership is one of the issues in this case. Plaintiff claims the balance while the executor claims one-half for the estate.

I believe it is helpful first to decide the legal status of the money in the account based on the facts as they existed up to the time of creation and then consider whether subsequent events showed that a different legal status was intended then or thereafter.

██ The mortgage was given to plaintiff and testatrix (as well as to the Wards), even though the testatrix then had only an inchoate right of dower in an undivided moiety of the mortgaged property. I need not decide whether this phase of the transaction is under a cloud since it was at least tacitly adopted by plaintiff. It is evident therefore that plaintiff was making a gift to his wife when he permitted her to be added as a mortgagee. What was the nature of the testatrix' estate in the mortgage which is personal property?

In *Ciconte v. Barba,* 19 *Del.Ch.* 6, 161 *A.* 925, it was held that a purchase money mortgage taken by husband and wife in joint names covering land previously held as tenants by the entireties, was held as tenants by the entireties. This doctrine was extended in *Rauhut v. Reinhart,* 22 *Del.Ch.* 431, 180 *A.* 913, where it was held, without regard for the form of the previous tenancy in the real estate, that words which would create an estate by the entirety with respect to

real estate, would also create a similar interest if the subject matter were personalty. Thus, upon the execution of the mortgage, the testatrix and plaintiff owned an undivided moiety as tenants by the entireties. I do not understand it to be contended that the legal relationship was otherwise because of the fact that the two married couples rather than one were the mortgagees.

Turning now to the proceeds of the escrow account which arose from the payment under the entireties mortgage, I consider whether subsequent actions of the plaintiff and testatrix evidenced a recognizable intent that the escrow money was to be treated other than as entireties property.

The executor contends that certain authorizations executed by plaintiff for withdrawals from the escrow account while the testatrix was alive, containing the words "from my portion of the account", or words of similar import, demonstrated an intention on plaintiff's part to make a gift of half the escrow account to the testatrix. While at first glance the authorizations seem to indicate such an intent, I find that the language relied upon was employed merely because the testatrix insisted that the authorizations contain such admissions before she would agree to them. Likewise, the petitioner, when asked to agree to a withdrawal, insisted on such language in way of retaliation. But, of decisive importance is the memorandum creating the escrow account. It expressly recognizes that the ownership of the proceeds of the sale was in dispute and in my opinion is now being resolved under the very terms of the escrow agreement. I do not believe the withdrawal authorizations changed the legal status of the money as determined by their mortgage interest.

The executor argues that an offer by plaintiff to divide his interests in all his property with testatrix in return for a divorce demonstrates an intent to make a gift of half of everything plaintiff owned. On the contrary, I find that this was a mere offer of settlement in the event of divorce and no more. It was never implemented in those terms. Likewise, I find that no intent to make a gift can be gleaned from the fact that there appears to have been an agreement for testatrix' separate maintenance until her death. For these reasons no alter-

ation in the legal status of the proceeds in the escrow account is found.

Since the escrow account was controlled by the terms of the escrow agreement under which it was deposited, I find it unnecessary to consider here the law governing joint accounts generally.

■ I conclude that plaintiff and testatrix held the proceeds of the mortgage as tenants by the entirety. Thus, on testatrix' demise the plaintiff took the proceeds by the right of survivorship incident to that tenancy.

The next issue concerns the property known as 817 Tatnall Street. The executor contends that while the deed to the property was in the names of the plaintiff and the testatrix as tenants by the entireties, due to other circumstances, the testatrix had an equitable interest in one-half of the premises, I consider the facts surrounding the acquisition and financing of this property.

The building located on the Tatnall Street premises is used by a subsidiary business of Wilmington Blueprint. It appears that the plaintiff and testatrix acquired these premises for $35,000 in July of 1959. The sources of the funds used to purchase the Tatnall Street property included a mortgage, withdrawals from Wilmington Blueprint Service's account, and a personal loan from R. D. Ward to plaintiff. Later, money from the first settlement with the developer was used to remodel the premises.

■ I turn now to the facts relied upon by the executor to alter what on the face of the deed is an estate by the entireties. He points first to the offer of settlement in return for a divorce and the agreement for separate maintenance. These two aspects of the case, as heretofore shown, are no basis for a finding that any interest was created in the testatrix other than that as to which they reached agreement. Nor are the equities with respect to the property, there being no charge of fraud, sufficient to overthrow the estate evidenced by the deed. The executor's suggestion that the testatrix worked at times at Wilmington Blueprint Service is no basis for altering the record ownership. After all, the income from this business went to support the

family. I therefore conclude that the testatrix had no equitable interest which would prevent the plaintiff from taking the entire property by right of survivorship.

The executor next contends that to the extent that they were used to remodel 817 Tatnall Street, he is entitled to an accounting of the funds first paid by the developer and placed in the joint account of plaintiff and testatrix. These funds admittedly were placed in the joint checking account. However, in view of the lapse of time, it must be presumed that they were spent with at least the tacit consent of the testatrix. Next, they apparently went to improve the premises which were held by them by the entireties and thus at the time were being spent for their mutual benefit. Finally, these funds resulted from the sale of property in which the testatrix only had an inchoate dower interest and so there is no special equity flowing in her direction with respect to this money. I conclude that the executor is not entitled to an accounting with respect to such funds.

I come now to a dispute between the executor and the plaintiff as to the ownership of certain personal property once located on the property on Milltown Road where plaintiff and the testatrix lived as man and wife. Plaintiff asks the court to apply *DuPont v. DuPont,* 33 *Del.Ch.* 571, 98 *A.2d* 493, where it was held "* * * that household goods and furnishings, even though contributed or paid for by the husband, are presumptively held jointly—by the entireties—when such property is in their joint possession and use." The executor argues that the evidence shows that certain of the property remained the sole property of the testatrix and therefore was not subject to the survivorship provision applicable to entireties property.

Items of personal property in question include the furnishings at 2511 Milltown Road and items stored in out buildings on those premises. Certain other items of personalty in dispute are evidenced by a United Van Lines bill of lading. They were bequeathed to the testatrix by her mother in 1958. Most of these items were located in 2511 Milltown Road, but the executor says many were never "used" within the rule in the Du Pont case. Two tea-services, one from the estate of the testatrix' mother and one purchased in Europe by the testatrix

before the separation, are also in dispute. Part of a highboy was purchased from a neighbor. The remainder was a legacy from the testatrix' mother. There is also a collection of coins, which both plaintiff and testatrix accumulated over the years.

I may state preliminarily that the word "use" as employed in the Du Pont case includes use for merely decorative purposes. What is more, goods once used jointly do not cease to be jointly held merely because they are subsequently stored. Therefore, only those goods coming from the estate of the testatrix' mother or some other source exclusively the testatrix', and never jointly used, remained the sole property of the testatrix and passed under her will.

I now apply, so far as possible, the announced rules to the specific property in dispute. As to certain specific items there is enough evidence in the record to warrant a finding. The household furnishings of the marital domicile are covered by the Du Pont rule. The two silver services, the highboy and the coin collection were "used" by the Putneys prior to the separation, and thus became entireties property. Nor, contrary to the executor's contention, is the United Van Lines bill of lading covering certain property received by the testatrix from her mother's estate such a document as will overturn the presumption of joint ownership as to the property therein listed that was thereafter in the marital domicile. Certainly the bill of lading was not prepared with an intent to maintain the listed items as the separate property of the testatrix. On the contrary, the bill of lading was prepared by the trucking company merely for shipping purposes.

The executor must be governed by the above rules and rulings in discharging his duty. In the event there are still some doubtful items, he should submit them to the plaintiff for consideration. If the parties cannot agree the court will rule on such items either after hearing or on the record, if the parties desire. The time and place for delivery as well as the identity of the items to be delivered or kept shall be attached as an exhibit to the order hereon.

The executor next contends that he is entitled to an accounting, for one-half of the mortgage and tax payments made by

plaintiff on the 2511 Milltown Road property from March 15, 1960 until July 13, 1964. He also claims a right to one-half of the joint banking account which was closed when plaintiff withdrew $25,197.44 therefrom on April 19, 1961. The testatrix lived at 2511 Milltown Road after the separation under an agreement by which plaintiff in lieu of paying more than $250 per month agreed to make the mortgage and tax payments. I do not understand the theory on which the executor claims the right to these sums. In any event, the testatrix' estate in this property, which was held by the entireties, was as great as plaintiff's. The money withdrawn by plaintiff from the joint account consisted almost entirely of funds that he had borrowed and deposited to pay Federal capital gains taxes incident to the sale to the developer. No fraud was committed when this money was withdrawn under these circumstances. The executor is not entitled to any part of such proceeds.

I turn now to the construction of the will. In the first sentence of Item 3 of the will, the testatrix bequeaths, "All sundry personal effects including jewelry, furniture, china, silver, antiques, clothing, all articles in out buildings, in 2511 [Milltown Road], etc. * * * to my son Thomas W. Putney absolutely." As noted above, only such items as were never used by the Putneys within the meaning of the rule in the Du Pont case pass under this provision to Thomas. This, of course, would include items purchased by the testatrix after the separation.

I next consider the problem with respect to the mortgage interest which the testatrix owned exclusively in some 7.44 acres. The executor contends that under Item 3 of the will the testatrix' interest in the proceeds of the mortgage passed as part of "All sundry personal effects * * *". I quote Item 3:

"Item 3 All sundry personal effects including jewelry, furniture, china, silver, antiques, clothing, all articles in out buildings, in 2511 etc. I give and bequeath to my son Thomas W. Putney absolutely. I give my one half interest in ~~the building lot known 817 Tatnall Street~~ the building and lot known as 817 Tatnall Street, Wilmington Delaware—in New Castle County and, with it the right to collect one half the rent

retroactive to the time it was occupied ∧ ^I give^ to my son Thomas W. Putney absolutely my 69% of the two and one-half acres in New Castle County bounded by Milltown Road, Old Milltown Road and which is now held in trust for me by Thomas W. Putney I give to my son Thomas W. Putney absolutely. I give three-quarters ¾ of any monies I own in any banks, and ~~three-quarters~~ all of any stocks which I own to my son Thomas W. Putney absolutely.

"I do not divide the above equally one half to my son, Thomas W. Putney, and one half to my son Hilton W. Putney not because I love Hilton less than Thomas (Thru lack of affection or concern for Hilton) but due to the fact that I think Thomas W. Putney will receive no more than ($1.00) one dollar from his father's Ellison W. Putney estate and that Hilton W. Putney may receive all the remainder of his father's (Ellison W. Putney) estate. If I am wrong, I can only hope and pray that my sons will do the correct and right things by each other.

~~"I do not provide anything for my son Hugh L. Putney~~

"I leave to my son, Hugh L. Putney the sum of one dollar ($1.00). I provide only the preceeding [sic] amount for my son, Hugh L. Putney—not thru lack of affection or concern but due to the fact that he will be provided for by my husband, Ellison W. Putney.

"I name my son Thomas W. Putney to be the Executor to serve without bond as either Executor or Trustee."

 The phrase "All sundry personal effects * * *" does not in its usual connotation include a mortgage interest. The succeeding explicit itemization "including jewelry, furniture, china, silver, antiques, clothing * * *" re-enforces the conclusion that the language was not intended to embrace the mortgage interest. Nor does a mortgage interest come within the provision concerning "monies I own in any banks". There being no standard residuary clause, I conclude that the testatrix died intestate as to her mortgage interest.

■ The second sentence of Item 3 which purports to devise an undivided one-half interest in 817 Tatnall Street, is inoperative. Under the law governing estates by the entirety, that property passed to plaintiff by right of survivorship when the testatrix died.

■ The executor contends that the testatrix intended to bequeath all monies in banks to Thomas. This contention arises from the fact that the words "three-quarters" were apparently prefixed to the gift of stock as well as money, but were deleted in the former case. From this fact the executor reasons that the testatrix intended to delete the words "three-quarters" as they applied to the gift of money as well, but failed to do so through oversight. He would have the court correct this "oversight" by implying a legacy of the other fourth to Thomas. I cannot accept this reasoning. The court is authorized to construe wills, not to correct "oversights" of this nature.

I conclude that Thomas took only three-fourths of the money in bank.

■ It is contended that Hilton should receive the one-fourth of the money in bank not bequeathed to Thomas. This contention is based on the theory of an implied legacy. Assuming that a legacy of this character may be constructed in an appropriate case, I am satisfied that there is nothing in the language of the will which would justify the finding of such a legacy here. For all practical purposes the testatrix omitted both Hilton and Hugh as beneficiaries under her will because she felt that her husband would provide for them.

I therefore conclude that the testatrix died intestate with respect to one-fourth of her money in banks.

One other matter requires notice. The plaintiff and testatrix apparently had a joint account in the Wilmington Savings Fund. The record does not appear to be adequate to decide whether this money passed to plaintiff under the terms of the account. If the parties cannot agree on this matter it should be taken up with the court promptly to decide on a procedure for resolving it.

Present order on notice.