Bertram N. WIDDER, and Courtland Manor, Inc., a Delaware corporation, Plaintiffs,

v.

Leonard S. LEEDS and William V. Leeds, Defendants.

Court of Chancery of Delaware, New Castle.

March 1, 1974.

Peter J. Shanley, Murdoch, Longobardi, Schwartz & Walsh, Wilmington, for plaintiffs, Bertram N. Widder and Courtland Manor, Inc.

Bruce M. Stargatt, Young, Conaway, Stargatt & Taylor, Wilmington, for defendant, William V. Leeds.

BROWN, Vice Chancellor.

William V. Leeds, one of the Defendants named in this action, has moved to vacate an order of sequestration entered by this Court on July 5, 1973. The sequestration order, made pursuant to 10 Del.C. § 366 for the purpose of compelling Leeds to appear in this State and to answer the complaint against him, attached a limited partnership interest in Courtland Manor Associates, a Delaware limited partnership. The interest sequestered is owned of record in the sole name of William V. Leeds.

Leeds seeks to have the order vacated for two reasons. First, although he acknowledges that he is the owner of record in his individual name, he contends that the beneficial or equitable interest in the partnership is owned by him and his wife as tenants by the entireties and that consequently it is not subject to seizure for suit brought against him only. Secondly, Leeds contends that the only allegations and prayers of the complaint directed against him alone seek the imposition of a constructive trust on lands owned by him, and that since previous decisions of our courts in Wightman v. San Francisco Bay Toll-Bridge Co., Del.Ch., 16 Del.Ch. 200, 142 A. 783 (1928) and Hughes v. Trans World Airlines, Inc., Del.Super., 40 Del.Ch. 552, 185 A.2d 886 (1962) have held that the complaint must set forth a claim definable in monetary damages in order for sequestration to be invoked, it is not a proper process to be used against him here.

Factually, it appears that prior to the formation of the partnership a number of meetings were held with William Leeds,

his son Leonard Leeds, and prosepctive investors. It is contended by the Plaintiffs, and not denied by Leeds at this point, that his wife, Viola, did not attend any meeting, that she was not mentioned and that it was not indicated that she would be associated with the partnership in any way. On November 6, 1968, William Leeds executed the Courtland Manor Associates partnership agreement as the only limited partner. Leonard Leeds was designated general partner. On this same date the agreement was amended so as to include additional limited partners, the Plaintiff Widder being one. Another amendment occurred on April 9, 1969, and, as to each amendment William Leeds alone was stated to be one of the limited partners. A Certificate of Limited Partnership and two amendments thereto were recorded as required by statute, each indicating that William Leeds was a limited partner and that he had contributed a sum certain toward the partnership. The name of Viola Leeds does not appear in any of these documents. Subsequent to formation, various meetings were held by the partnership, including one to discuss the possible sale of the partnership interests. William Leeds attended these meetings but his wife did not. Although various financial statements of the partnership have been produced, none indicate that Viola Leeds has any legal or beneficial interest in the partnership.

Leeds counters these facts by his personal affidavit in which he states that

"While I am the record owner of an interest in Courtland Manor Associates, a limited partnership, the beneficial interest is vested in my wife, Viola Leeds and me jointly. The funds utilized for the acquisition of the interest in the said limited partnership derived directly from property held jointly by my wife and me, including a loan at Bank of Delaware signed for by both of us with securities in joint ownership as collateral. The limited partnership interest belongs to both of us together, and not simply to me."

The only other evidence offered at this point is the affidavit of Viola Leeds in which she states as follows:

"2. During November, 1968, my husband and I obtained a loan at the Bank of Delaware with jointly owned securities as collateral, and the documents relating to this loan were signed by both me and my husband. It was my understanding and expectation that the proceeds of this loan would be used to purchase a limited partnership interest in Courtland Manor Associates, which interest would be owned by both me and my husband jointly."

"3. Until sometime early in 1973, I had no knowledge or reason to believe that the limited partnership interest was owned of record other than by me and my husband jointly."

■ Previous decisions in this State have recognized that personal property may be owned by husband and wife as tenants by the entireties. Carlisle v. Parker, Del.Super., 8 W.W.Har. 83, 188 A. 67 (1936); Rauhut v. Reinhart, Del.Orph., 22 Del.Ch. 431, 180 A. 913 (1932); DuPont v. DuPont, Del.Ch., 33 Del.Ch. 571, 98 A.2d 493 (1953); In re Northeastern Water Co., Del.Ch., 28 Del.Ch. 139, 38 A.2d 918 (1944); In re Griffith, Del.Ch., 33 Del.Ch. 387, 93 A.2d 920 (1953). It has likewise been held that, in the absence of proof to the contrary, a joint bank account opened in the conjunctive form in the name of a husband and wife may create a tenancy by the entireties, and this status is not altered by the fact that either may withdraw funds therefrom. Hoyle v. Hoyle, Del.Ch., 31 Del.Ch. 64, 66 A.2d 130 (1949). In Ciconte v. Barba, Del.Ch., 19 Del.Ch. 6, 161 A. 925 (1932) it was stated that "the weight of authority deduces a holding by the entireties so to speak from the bare circumstance that the title to a mortgage, bond, note or *bank account* is in the husband and wife." (Emphasis added) Moreover, a tenancy by the entireties can result from the joint acquisition of personalty by a husband and

wife even though the instruments by which they take it do not refer to their marital relationship. In re Giant Portland Cement Co., Del.Ch., 26 Del.Ch. 32, 21 A.2d 697 (1941). Nor is it of any consequence that one spouse contributes more than the other to the joint bank account if it is their intention to hold it by the entireties. In re Putney's Will, Del.Ch., 213 A.2d 57 (1965); Moser v. Moser, Del.Supr., 287 A.2d 398 (1972).

In Rigby v. Rigby, Del.Ch., 32 Del.Ch. 381, 88 A.2d 126 (1952) this Court indicated by way of dicta that if it could be shown that personal property had been purchased with funds from a bank account held by a husband and wife by the entireties, the property purchased might also be held by the entireties. Any further speculation on this point was recently put to rest in Moser v. Moser, supra. There the issue was the ownership of corporate stock acquired in the sole name of the husband with funds taken from the joint bank account of the husband and wife and which had been earned and deposited in the main by the husband. The Chancellor had found from the facts that the parties intended to hold the bank account by the entireties, and in affirming his ruling that the wife had a one-half interest in the stock, the Supreme Court stated as follows at 287 A.2d 400:

"When property is acquired by the use of joint funds, but title is taken in the name of one spouse alone, the property nevertheless will remain the joint property of the spouses."

Thus, it seems, the argument of Leeds reduces itself to this. Since personal property can be held by a husband and wife as tenants by the entireties, and since direct derivatives of entireties property prima facie remain entireties property, even if taken in the name of one spouse alone, the mere showing that the partnership interest taken in his name was purchased by funds obtained on the joint application of him and his wife and secured by securities owned by them jointly, without more and

regardless of anything else, establishes that the beneficial ownership of the partnership interest is vested in him and his wife as tenants by the entireties and, as such, cannot be subject to sequestration for a claim brought against him alone.

■ Without doubt, once it is brought to the attention of the Court that the interest seized pursuant to a sequestration order is actually held for the benefit of another, justice requires that it be released. Nickson v. Filtrol Corp., Del.Ch., 265 A.2d 425 (1970); Jacobs v. Tenney, D.C.Del., 316 F.Supp. 151 (1970). However, I am of the opinion that the argument made by Leeds suffers from a crack in its foundation.

The starting point for his position assumes that where funds are obtained and deposited in a joint bank account by a husband and wife, they automatically become funds held by the entireties. The above authorities, as I read them, do not support such a principle. In *Ciconte* it was held that such a joint deposit "deduces", or infers, such a result, not that it is required. Carlisle v. Parker involved funds remaining from the foreclosure of a purchase money mortgage held by husband and wife on lands formerly owned by them by the entireties and thus the funds bore the same relationship as their title to the realty. In Rauhut v. Reinhart the court found such a tenancy in a mortgage only after hearing the evidence even though ownership was in the husband and wife. An evidentiary hearing prior to determination was also held in *Putney* and *Rigby*. In *Griffith* it was not disputed that the personalty was held by the entireties, and in *Northeastern Water Co.* and *Giant Portland Cement Co.* the opinions assumed that the stock was owned by the entireties without explanation as to how such ownership came about.

■ In Hoyle v. Hoyle the Chancellor held that where the facts showed that monies brought into the marriage went into an unsegregated common fund which in turn was used to create a joint bank account between the spouses, there was a presumption

that they held it by the entireties. Likewise, *DuPont* held that tenancy by the entireties is "presumed" where joint possession of personalty is in the husband and wife, and in *Moser* the Supreme Court specifically based its decision on a factual finding by the Chancellor that the husband and wife intended to regard the funds in the joint bank account as being held by the entireties. Thus it would seem that the best that can be said is that where a husband and wife sign to borrow funds which are then placed on deposit in their joint names, there is a presumption that they intend to hold as tenants by the entireties.

■ Such a presumption can, of course, fade in the presence of factors which belie such an intention. Here the affidavit of Mr. Leeds simply asserts that because the funds he used to purchase his partnership interest derived directly from property held jointly by him and his wife, the interest must belong to them jointly, and not to him alone. This is obviously a "bootstrap" statement based on a legal conclusion. It does not reek of a clear intent. Mrs. Leeds, in her affidavit, states that she signed the loan documents along with her husband and that it was her "expectation" that the proceeds would be used to purchase a joint partnership interest. When added to this is the fact that the interest has been allowed to stand of record in the name of Mr. Leeds alone for some five years, and when it considered that lending institutions routinely require the signature of a wife as a condition to loaning large sums of money, I am of the opinion that the overall picture at this point does not command a finding that the proceeds used to procure the partnership interest were considered as entireties property at the time they were obtained. Thus there can be no presumption that the partnership interest is held by the entireties now.

In addition, we are dealing with an interest in a limited partnership, which is an entity authorized under 6 Del.C. Ch. 17. By 6 Del.C. § 1703 it is provided that in order for a limited partnership to be

formed, a certificate must be recorded in the Recorder's office in every county wherein the firm has a separate place of business, and this certificate must contain, among other things, "the name and residence of each partner". Such a certificate, along with two amendments, has been recorded as to Courtland Manor Associates showing only William Leeds, and not William and Viola Leeds, as a limited partner.

■ It has been said that the object of the registry laws in providing for the recordation of an instrument is to afford notice of its contents, and of all rights, title, or interest, "legal or equitable", created by or embraced within it, to every person subsequently dealing with the subject matter whose interest or duty it is to make a search of the records. Winchester v. Parm, Del.Ch., 16 Del.Ch. 84, 141 A. 271 (1928); Conly v. Industrial Trust Co., Del.Ch., 27 Del.Ch. 28, 29 A.2d 601 (1943); 2 Pomeroy, Equity Jurisprudence (4th Ed.) § 649.

■ In a related situation, where a wife furnished money to her husband for the purchase of land, and the conveyance was made to the husband in his sole name and was recorded, the wife was held estopped from asserting a claim of ownership against the payee of a note indorsed by her husband, the payee having accepted the note on the strength of the public record showing title in the husband. J. D. Sisler Co. v. Sterling, Del.Ch., 14 Del.Ch. 163, 123 A. 129 (1924). Here we have a similar situation. Assuming arguendo that it was the initial intention of Leeds and wife to obtain the loan and hold the interest as tenants by the entireties, they have permitted their joint interests to be placed in the name of the husband alone in the face of a recording statute, the apparent purpose of which is to give notice to all persons dealing with the subject matter of the limited partnership (and I assume that this should include other limited partners as well as those entering into business relations with it) of the legal and equitable interests of

the persons who are partners therein. If they failed to do this and allowed the interest to stand of record in the name of only one of them for five years, and thereby induced those who have dealt with Leeds alone to rely on it, should they now be permitted to defeat jurisdiction for those so induced to even litigate a claim against Leeds by asserting an interest different than that recorded? I think not.

Leeds contends that the holding of J. D. Sisler Co. v. Sterling only applies in a case where the wife is aware that the deed is recorded in the sole name of the husband and that consequently there is no estoppel in this instance since his wife was unaware of the manner of recording. To adopt this view would be to hold that the recording of the certificate was notice to the world, with the exception of Mrs. Leeds simply because she did not know about it. It would amount to court-awarded protection from service of process as a reward to the husband for his failure to disclose the joint interest of his wife and an exoneration of the wife for not knowing what was going on even though it was a matter of public record. I fail to see the equity of such logic when it is offered to deprive the Court of jurisdiction over the party whose conduct created the situation.

In short, I am also of the opinion that Leeds is estopped from denying his ownership of the partnership interest so as to defeat the order of sequestration.

As to the second reason advanced in support of the motion to vacate the sequestration order, namely, that the complaint does not seek monetary damages against William Leeds, it becomes incumbent "to see whether by any fair reading of the present complaint it comes within the statute [10 Del.C. § 366] as construed". E. M. Fleischmann Lumber Corp. v. Resources Corp. Int., Del.Ch., 33 Del.Ch. 587, 98 A.2d 506 (1953). As stated by the Chancellor in that decision at 98 A.2d 508:

"The restriction imposed on the use of the statute by the Wightman case

[Wightman v. San Francisco Bay Toll-Bridge Company, 16 Del.Ch. 200, 142 A. 783] is met if the proceeds from the sale of the seized property would afford the plaintiff legally recognized relief, whether such relief be the primary relief sought or some alternative."

Paragraphs 15 and 16 of the complaint allege the breach of a fiduciary duty by Leeds to the Plaintiff Widder concerning the transfer of land to the partnership at an inflated value. Paragraphs 23 and 24 allege the breach of a fiduciary duty owed by Leeds to the Plaintiff corporation, Courtland Manor, Inc., for causing the corporation to enter into a lease to the partnership which is alleged to be unduly burdensome and unfair.

◼ In addition to seeking the imposition of a constructive trust on lands remaining in Leeds's name, the Plaintiffs also seek by paragraph 3 of the *ad damnum* clause to recover damages against both William Leeds and his son, Leonard Leeds, for fraud, misrepresentation and breach of duty. Since the imposition of a trust is not the sole relief sought against William Leeds even though it may be the primary relief sought against him alone, it appears that the complaint does contain allegations and prayers which, if established, would permit an award of monetary damages and thus the sale of the sequestered partnership interest to satisfy such monetary damages should judgment be entered against Leeds after his refusal to appear and defend the action. Where nonresidence is alleged, and a monetary claim in any amount is asserted against him, a defendant's property may be seized pursuant to 10 Del.C. § 366 to induce his appearance. Hughes v. Trans World Airlines, Inc., supra.

◼ I find inappropriate the argument of Leeds that even though the complaint does contain a prayer for money damages against him, it cannot be applicable to him because he is only a limited partner in the partnership and neither an

officer, director nor shareholder in Courtland Manor, Inc. and thus could not have been under any fiduciary duty to either Plaintiff. This argument attacks the merits of the complaint for its failure to state a claim. Such an attack must be brought by a motion to dismiss under Rule 12(b)(6) and such a motion cannot be made without the Defendant first submitting himself to the jurisdiction of the Court. An attack on the merits of the Plaintiffs' claim may not be made under the guise of a special appearance by a nonresident defendant to contest the jurisdiction of the Court over him. Hughes v. Trans World Airlines, Inc., supra; Chrysler Corporation v. Dann, Del.Super., 3 Storey 430, 171 A.2d 223 (1961).

The motion of the Defendant, William V. Leeds, to vacate the order of sequestration is denied. Counsel for Plaintiffs are directed to present the appropriate order, on notice.