Richard S. **FISCHER** and Robert A. Fischer, Jr., Personal Representatives of the Estate of Robert A. Fischer, Sr., and the Estate of Robert A. Fischer, Sr., Plaintiffs,

v.

**Jeanne M. FISCHER, Defendant.**

**Civil Action No. 2242–S.**

Court of Chancery of Delaware, Sussex County.

Submitted: Dec. 23, 2004.
Decided: Jan. 12, 2005.

---

to summary judgment at this time. For sake of clarity, instead of referring to each party's motion and how they overlap, I shall instead organize this Opinion by asset.

David N. Rutt, of Moore & Rutt, P.A., Georgetown, Delaware, Attorney for Plaintiffs.

Charles J. Durante, Gregory J. Weinig and Scott G. Wilcox, of Connolly Bove Lodge & Hutz LLP, of Wilmington, Delaware, Attorneys for Defendant.

## OPINION

CHANDLER, Chancellor.

When a married couple own property by the entireties and then one spouse initiates a divorce that will require the equal division of all jointly owned property, it is inequitable for the spouse who initiated the divorce to assert a claim to all of the property by operation of law when that spouse was under a contractual obligation to divide the property equally. In this case, a resulting trust for the benefit of the estate of Mr. Fischer will be placed upon all property that Mr. and Mrs. Fischer held by the entireties.

Both plaintiffs and defendant have filed motions for summary judgment in this matter. Defendant's motion expressly requested summary judgment "with respect to all claims of the Plaintiffs' Amended Complaint and all of Defendant's counterclaims." Plaintiffs' motion is vague as to which claims or counterclaims it addresses, but by virtue of the extensive briefing, I conclude that all claims and counterclaims are properly before the Court and subject

## I. INTRODUCTION

Robert A. Fischer, Sr. ("Mr. Fischer") and Jeanne M. Fischer ("Mrs. Fischer") were married on November 26, 1988. A little more than a month before their marriage, they executed a Prenuptial Agreement (the "Agreement").[1] Both Mr. and Mrs. Fischer were represented by their own counsel, and the Agreement was duly witnessed. Mrs. Fischer does not here dispute the validity of the Agreement, and in fact, heavily relies on several of its provisions to establish her counterclaims.[2] The Agreement contains, *inter alia*, the following relevant provisions:

3. *Ownership of Property, Support and Alimony*

 a. The parties agree that all property owned separately by them at any time, whether prior to or after their marriage, including all such property listed on [the attached Schedules], as well including [sic] all property acquired by each of them hereafter during their marriage, together with any appreciation, income and earnings thereof, and all property which is derived directly or indirectly from the same and any appreciation, income and earnings thereof, shall remain the separate property of the party owning the same and shall remain free of all claims by the other and shall not become marital property subject to equitable distribution un-

---

1. Ex. 2 to the Am. Compl.

2. *See* Answer to Am. Compl. For Decl. J. and Inj. Relief And Countercl. Of Def.

der the provisions of the Delaware Code, its supplements and amendments, or any similar law of any jurisdiction which may be applicable now or in the future. It is further agreed that, during the parties' joint lifetimes, any property owned jointly by the parties shall be deemed owned by them in equal shares.

b. In the event the parties are separated, then upon such event, each party agrees to vacate any residence owned by the other party as promptly as practicable, but in no event later than six months following the date of separation.... Upon the intended wife so vacating any residence owned by the intended husband, or upon the parties' separation if the intended husband does not own a residence, the intended husband shall transfer to the intended wife, in cash, ... [$500,000]. Further, in the event the parties are separated then they shall promptly take all steps necessary and appropriate to divide equally between them any property which is jointly owned....

c. For the purposes of this Agreement, the parties shall be deemed to be separated upon the earlier to occur of (i) the entry of a final decree of divorce which divorces the parties from the bonds of matrimony, or (ii) such time as either party gives to the other written notice of separation substantially in the form set forth in Schedule "C" attached hereto....

After more than 13 years of marriage, Mrs. Fischer filed for divorce in Florida on December 5, 2001. Mr. Fischer signed the notice of separation from Schedule C of the Agreement (the "Notice"), dated it December 28, 2001, and caused it to be faxed to Mrs. Fischer by his counsel on January 2, 2002.[3] During the pendency of the divorce, and before a final divorce decree could be issued, Mr. Fischer passed away on December 1, 2002.

During their marriage, the Fischers acquired the following property at issue in this case:[4] (1) 110 Breakwater Reach in Lewes (also known as Lot 71 of Cape Shores);[5] (2) Lot 72 of Cape Shores;[6] (3) a 1993 Nissan;[7] (4) a 2001 Mercedes–Benz S430;[8] and (5) a 2002 BMW 525i.[9] Also at issue are: (6) a payment of $500,000 allegedly owed to Mrs. Fischer pursuant to the Agreement;[10] (7) an investment account at Janney Montgomery Scott number 3301–7960;[11] (8) 2000 shares of County Bank stock;[12] (9) the Delaware license plates

3. App. To Opening Br. Of Pls.' On Mot. For Summ. J. (hereafter "P-___") at 148–49; Defendant's Appendix (hereafter "D-___") at 169–70.

4. The Amended Complaint also refers to real property located in Florida, but nothing in this Opinion shall be construed to adjudicate the form of title or ownership of that property.

5. P–194–98; D–132–34.

6. P–202–06; D–129–31.

7. P–209; D–164.

8. P–213.

9. P–210–12; D–165–66.

10. Agreement at ¶ 3b.

11. D–135–56; App. To Answering Br. Of Pls.' To Def.'s Opening Br. (hereafter "PA-___") at 11–31.

12. D–159–61.

attached to the 2001 Mercedes (No. 7225) and 2002 BMW (No. 678);[13] as well as (10) various undefined items of personal property at the Fischers' residences in Delaware and Florida.

## II. STANDARD OF REVIEW

Court of Chancery Rule 56(c) permits summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[14] When the Court is faced with cross-motions for summary judgment the same standard must be applied to each of the parties' motions and the mere existence of cross-motions does not necessarily indicate that summary judgment is appropriate for one of the parties.[15] Thus when presented with cross-motions for summary judgment a movant is entitled to relief only if the Court determines that the record does not require a more thorough development to clarify the law or its application to the case.[16]

## III. ANALYSIS

With respect to titled property, when the property is "conveyed to husband and wife, without specifying the estate created, ... a tenancy by the entireties [is created]."[17] It is not necessary that the title explicitly refer to the marital relationship.[18] With respect to untitled personal property in the joint possession and use of the spouses, especially household goods and furnishings, that property is presumptively held by the entireties.[19] The tenancy by the entireties is based on the legal fiction that husband and wife are one,[20] and "neither [spouse] without the consent of the other can [alienate], encumber, or in any way impair the estate with respect to the other."[21] It is irrelevant that the spouses do not make equal contributions to the purchase of the asset if they intend to hold it by the entireties.[22]

### A. The Real Estate

The lease on Lot 71 of Cape Shores was assigned to "Robert A. Fischer, Sr. and Jeanne M. Fischer, husband and wife...."[23] Similarly, the lease for Lot 72 was assigned to "ROBERT A. FISCHER, SR. AND JEANNE M. FISCHER, hus-

---

13. P–211; D–166 (BMW registration).

14. Ct. Ch. R. 56(c).

15. *Kronenberg v. Katz*, 2004 WL 1152282, at *13, 2004 Del.Ch. LEXIS 77, at *38 (Del.Ch.).

16. *Id.*

17. *Henderson v. Chantry*, 2002 WL 244692, at *3 (Del.Ch.).

18. *Widder v. Leeds*, 317 A.2d 32, 35 (Del.Ch. 1974); *see Bullen v. Davies*, 209 A.2d 81, 83 (Del.Ch.1965) (holding that the prohibition of joint tenancies in the absence of express language found in 25 *Del. C.* § 701 is not applicable to tenancies by the entirety).

19. *William M. Young Co. v. Tri–Mar Assoc., Inc.*, 362 A.2d 214, 215 (Del.Super.1976).

20. *In re Cochran's Real Estate*, 66 A.2d 497 (Del.Ch.1949).

21. 41 AM.JUR.2D *Husband and Wife* § 39 (1995); *Steigler v. Ins. Co. of N. America*, 384 A.2d 398 (Del.1978).

22. *Widder*, 317 A.2d at 35; *Hanby v. Hanby*, 245 A.2d 428, 430 (Del.1968) (noting that when title is taken by husband and wife as tenants by the entireties, and the husband alone has provided the consideration, a rebuttable presumption arises that the husband intended to make the tenancy by the entirety a gift to his wife).

23. P–194; D–132.

band and wife, as Tenants by the Entireties...."[24] Plaintiffs argue that because the proceeds for the purchases of these properties were provided by Mr. Fischer, pursuant to the Agreement,[25] those properties belonged exclusively to him and not to him and Mrs. Fischer jointly or as tenants by the entireties.

Preliminarily, to the extent that either party argues that Mr. and Mrs. Fischer held these leaseholds, or any other property at issue in this case, as joint tenants (either with or without a right of survivorship), that argument fails in the face of the plain language of 25 *Del. C.* § 701,[26] which requires joint tenancies to be expressly created. Nothing in the record expressly indicates that the parties created a joint tenancy with respect to any of the property at issue in this case and, therefore, no joint tenancy existed.[27]

With respect to whether the Lewes real estate was held by the entireties or by Mr. Fischer solely, I turn to the Agreement, which (as quoted above) states that "all property which is derived directly or indirectly from [separate property] and any appreciation, income and earnings thereof, shall remain free of all claims by the other *and shall not become marital property subject to equitable distribution under the provisions of the Delaware Code.*"[28] Plaintiffs, in essence, are asking this Court to read the foregoing provision in a way that would treat all the property owned by Mr. and Mrs. Fischer as solely belonging to

Mr. Fischer if he paid for the property out of his disproportionate personal wealth compared to Mrs. Fischer. To that end, plaintiffs have provided the Court with numerous pages of cancelled checks, bank statements, and other documentation in an attempt to trace the purchase of the Lewes properties to Mr. Fischer's premarital assets.

Despite their efforts, plaintiffs' argument misses the mark. The same paragraph of the Agreement makes clear that the provision quoted above was not intended to preclude Mr. and Mrs. Fischer from owning property together during their marriage by stating: "It is further agreed that, during the parties' joint lifetimes, any property owned *jointly* by the parties shall be deemed owned by them *in equal shares*," with such equal ownership despite any disparity in contribution between Mr. and Mrs. Fischer to the purchase of the property.[29] This construction is bolstered by the reference to "equitable distribution provisions of the Delaware Code,"[30] namely 13 *Del. C.* § 1513 and how that statute defines "marital property" for purposes of distribution *upon divorce.* The Agreement, therefore, does not provide sufficient evidence to overcome the presumption created by the deed/assignment's grant to Mr. and Mrs. Fischer as "husband and wife," that the Lewes properties were held by them by the entireties, a form of joint ownership. There being no further evidence in the record to rebut that presump-

---

24. P–202; D–129.

25. Agreement at ¶ 3a.

26. 25 *Del. C.* § 701 provides:

No estate, in joint tenancy, in lands, tenements or hereditaments shall be held or claimed by or under any grant, devise or conveyance made to any persons, other than to executors or trustees, unless the premises therein mentioned are expressly granted, devised or conveyed to such persons, to be held as joint tenants and not as tenants in common.

27. *See Short v. Milby,* 64 A.2d 36 (Del.Ch. 1949).

28. Agreement at ¶ 3a (emphasis added).

29. *Id.* (emphasis added).

30. Id.

tion, I conclude that the Lewes properties, Lots 71 and 72 of Cape Shores, were held, before the death of Mr. Fischer, by Mr. and Mrs. Fischer as tenants by the entireties, and owned in equal shares.

### B. The Automobiles

■■■■ A similar analysis is appropriate for the three automobiles. The Nissan is titled to "FISCHER ROBERT (—) OR JEANNE M." [31] The Mercedes is titled to "FISCHER ROBERT A & OR FISCHER JEANNE M," [32] and the BMW is titled to "FISCHER JEANNE M & OR FISCHER ROBERT A." [33] Notwithstanding that this " & OR" designation may be the standard designation of the Delaware Department of Motor Vehicles,[34] the presence of both husband and wife on the title is sufficient to create a presumption that the vehicle is held by the entireties.[35] As to the Nissan and Mercedes, there is no evidence in the record that would rebut the presumption.[36] As to the BMW, plaintiffs argue that Mr. Fischer purchased the BMW alone, in Delaware, and with his own separate funds, while Mrs. Fischer was in Florida.[37] As evidence, they point to the temporary registration for the vehicle as being in Mr. Fischer's name only.[38] This argument cannot prevail for three reasons.

First, the temporary registration, on its face, does not name the owner(s) of the vehicle, but rather the person to whom it was "delivered." [39] Furthermore, the form implies that the vehicle is delivered to one person only, or at least that only one person is listed as accepting delivery, despite the fact that many vehicles are registered in the name of more than one.[40] Second, if it were indeed the case that the vehicle was initially registered solely in the name of Mr. Fischer, plaintiffs fail to explain how Mrs. Fischer would be able to change the title to the vehicle by adding her name without Mr. Fischer's consent. Third, neither of the plaintiffs has given testimony that they spoke to their father and that it was Mr. Fischer's intent that he solely own the vehicle. They have no personal knowledge on which to base their opinion that the car belonged to Mr. Fischer alone. Accordingly, the presumption based upon the title stands based on the lack of relevant and probative evidence to the contrary. The 2002 BMW was held by Mr.

---

31. P–209; D–164.

32. P–212; D–165.

33. P–213.

34. *See William M. Young Co.,* 362 A.2d at 216 n. 2.

35. *See id.,* 362 A.2d at 215–16; *In re Giant Portland Cement Co.,* 21 A.2d 697 (Del.Ch. 1941).

36. Plaintiffs even concede that the Nissan and Mercedes were "owned jointly." Depo. of Richard S. Fischer at 25. *See* Opening Br. of Pls. On Mot. For Summ. J. at 25; Answering Br. of Pls. To Def's. Opening Br. at 17. Of course, as explained above, I cannot consider the Nissan and Mercedes to be held by Mr. and Mrs. Fischer as joint tenants because of 25 *Del. C.* § 701. A tenancy by the entireties is a form of joint ownership even if it is not a joint tenancy.

37. I harbor serious reservations about plaintiffs' argument that Mr. Fischer purchased the car himself and from his own funds when the record clearly indicates that $26,264.80 was paid to I.G. Burton, the seller of the BMW, from *Mrs.* Fischer's First Union account within two days of the issuance of the temporary registration. *See* P–288.

38. Depo. of Richard S. Fischer at 25–26; P–210.

39. P–210.

40. *Id.* Based upon a simple glance at the form, it appears that there is only space for the name of one person and one drivers' license number.

and Mrs. Fischer, during his lifetime, by the entireties.

### C. The $500,000 Payment

 The next issue concerns the $500,000 payment to Mrs. Fischer that would vest under certain circumstances pursuant to paragraph 3b of the Agreement. As concluded above, Mr. and Mrs. Fischer owned the Lewes residence as tenants by the entireties. Due to the legal fiction of the tenancy by the entirety, each spouse does not own half of the estate, but rather, "each spouse is seized not merely of equal interests, but of *the whole estate during their lives.*" [41] Both Mr. and Mrs. Fischer, therefore, were equal co-owners of the entirety of the Lewes residence.

The Agreement does not appear to speak directly to the situation at hand, where both parties owned the residence. Furthermore, the language of the Agreement does not support plaintiffs' argument that, in order for the $500,000 payment to vest, if at all, the Lewes residence must be solely owned by Mr. Fischer. Therefore, if Mrs. Fischer vacated the Lewes residence, because it was owned by Mr. Fischer (and herself, though the language of the Agreement makes that irrelevant as to whether it was owned by Mr. Fischer), the predicate to the payment which states that "[u]pon the intended wife so vacating any residence owned by the intended husband, ... the intended husband shall transfer to the intended wife, ... $500,000," will have been met. [42] The question then boils down to this: did Mrs. Fischer vacate (within the meaning of the Agreement) the Lewes residence? If so, she is entitled to the $500,000. If not, she is not so entitled.

As the parties' briefs focused more on the question of who owned the residences and not whether the Lewes residence was vacated, the potential evidence on this point has not been clearly presented to the Court. Mrs. Fischer still maintained an interest in the Lewes residence (despite the Agreement that would have required her to divest herself of jointly-held property after the Notice of Separation was given), and may have retained an interest in the Florida residence. It appears that Mrs. Fischer may have had access to the Lewes residence after filing for divorce and after Mr. Fischer sent her the Notice of Separation, and that she may have maintained items of personalty there. [43] Those actions (and inaction) may be inconsistent with a vacation of the Lewes residence, as that term is used in the Agreement. Because this raises a genuine issue of material fact, this claim cannot be disposed of on summary judgment, and the parties should be prepared to address this issue at trial.

### D. The Investment Account

 The parties dispute whether the Janney Montgomery Scott ("JMS") account was held individually by Mr. Fischer or jointly between him and his wife. There are severe discrepancies in the evidentiary record on this topic. For example, Mrs. Fischer appears to have testified at her deposition that she met personally with Mr. Mancini, the financial consultant from JMS who opened the accounts. [44] Mr. Mancini, on the other hand, avers that he never met Mr. or Mrs. Fischer in person. [45] Mrs. Fischer testifies that she and Mr. Fischer pooled monies to be placed in the

---

41. *Henderson*, 2002 WL 244692, at *4 (emphasis added); *Steigler*, 384 A.2d 398.

42. Agreement at ¶ 3b.

43. Depo. of Jeanne M. Fischer at 135–38.

44. *Id.* at 108.

45. PA–11.

account,[46] but Mr. Mancini states that the funds used to open the account were transferred from another held by Mr. Fischer personally.[47] Mr. Mancini further stated that the account in question was and always had been an individual account of Mr. Fischer and that the joint designation found on certain statements was due to a clerical error.[48] In light of the conflicts present in the record, I conclude that there are still genuine issues of material fact yet to be resolved with respect to the ownership of the account, both at creation and through possible subsequent modification, as Mrs. Fischer later signed documents relating to the account. Accordingly, the parties should prepare for trial on this issue.

### E. The County Bank Stock

 Both parties appear to agree that the County Bank stock was held by Mr. and Mrs. Fischer during their lifetimes by the entireties.[49] The stock certificate is titled to "ROBERT A. FISCHER AND/OR JEANNE M. FISCHER." [50] For the same reasons that the real property and automobiles were held by the entireties, I conclude that the stock was also held by the entireties.

### F. The License Plates

 The parties' depositions with respect to the provenance of the Delaware license plates number 678 and 7225 are materially inconsistent. Plaintiffs testified at their depositions that tag 678 belonged to their mother (before Mrs. Fischer married Mr. Fischer) and that Mr. Fischer also owned tag 7225 before his marriage to Mrs. Fischer.[51] Mrs. Fischer testified, although her testimony was not completely clear on the subject, that tag 678 was owned by Deborah Fischer and that tag 7225 was acquired during the course of the marriage. Therefore, there is a genuine dispute of material fact as to whether the tags were marital property or the separate property of Mr. Fischer. The parties should prepare for trial on this issue.

### G. Other Personalty

 To the extent that household goods and effects were acquired during the marriage, they were presumably owned by Mr. and Mrs. Fischer by the entireties during their lives.[52] There being no evidence in the record as to particular items, the Court is not in a position to rule with respect to the division of personal property at this time. If this issue is still in dispute, the parties should present evidence at trial to support their claims to specific items of personalty; otherwise, the presumption of a tenancy by the entireties will prevail.

### H. Disposition of the Entireties Property

 When husband and wife hold property as tenants by the entirety, upon death of one spouse, the surviving spouse's whole interest in the property continues.[53] In ordinary circumstances, this would result in Mrs. Fischer retaining full owner-

---

46. Depo. of Jeanne M. Fischer at 108.

47. PA–12.

48. PA–11–13, 30–31; D–136–149.

49. Def.'s Opening Br. In Support Of Her Mot. For Summ. J. at 18–19; Answering Br. Of Pls. To Def's. Opening Br. at 16–17; Depo. of Richard S. Fischer at 27–28.

50. D–159–60.

51. Depo. of Richard S. Fischer at 26–27; Depo. of Robert A. Fischer, Jr. at 21–23.

52. *See* nn. 19 & 22.

53. *Hurd v. Hughes,* 109 A. 418, 419 (Del.Ch. 1920).

ship (because as a tenant by the entirety with Mr. Fischer, they each independently had full ownership) of the Lewes properties, the automobiles, the County Bank stock, and any personalty or other property hereafter adjudicated to be held by the entireties.

This case, however, is far from ordinary. It was Mrs. Fischer who chose to terminate her marriage by filing for divorce against Mr. Fischer. Understandably, Mr. Fischer then sent her the Notice of Separation contemplated by the Agreement. The Agreement required Mr. and Mrs. Fischer to *"promptly* take all steps necessary and appropriate to divide equally between them any property which is jointly owned."[54] It appears that other than a few property settlement offers in connection with the Florida divorce action, the parties did not fulfill the mandate of paragraph 3b as they ought to have done.[55] Clearly, had the parties divided the property equally during the year between Mrs. Fischer's filing for divorce and Mr. Fischer's death, as required under the Agreement, Mrs. Fischer would have received one-half of the entireties property, and Mr. Fischer (and later his estate) would have received the other half.

By operation of law, full and sole ownership of all the entireties property immediately vested in Mrs. Fischer upon the death of her husband. Nevertheless, because "equity regards as done that which ought to be done,"[56] the Court will regard Mr. and Mrs. Fischer as having acted in accordance with the intent manifested in the Agreement. This is especially reasonable given Mrs. Fischer's attempt to use her failure to divide the property in accordance with the Agreement that she signed to defeat the claims of Mr. Fischer's estate. She who seeks equity must do equity.

The Court will impose a resulting trust upon the property that is now owned solely by Mrs. Fischer that was previously held by her and Mr. Fischer by the entireties, including the Lewes properties, the three automobiles, the County Bank stock, and all other property now or hereafter held to have been owned by Mr. and Mrs. Fischer as tenants by the entireties at the time of Mr. Fischer's death. "A resulting trust is an equitable remedy by which a court of equity may give effect to the intentions of the parties to a transaction."[57] A resulting trust is "designed to prevent unjust enrichment and to ensure that legal formalities do not frustrate the original intent of the transacting parties."[58] Mrs. Fischer holds legal title to all of the property, but equitable title to one-half of each of those properties individually is hereby vested in the estate of Mr. Fischer.

The Agreement is quite clear that Mr. and Mrs. Fischer intended an equal division of the property owned by both of them in the event of a separation (even if the separation did not necessarily lead to divorce). Mrs. Fischer filed for divorce, and Mr. Fischer gave notice of their separation. There is no indication in the record that either Mr. or Mrs. Fischer intend-

---

54. Agreement at ¶ 3b (emphasis added).

55. P–215–22, 228, 232; PA–2–3, 48–49.

56. *Freeman v. Fabiniak*, 1985 WL 11583, at *8 (Del.Ch.); *see also Monroe Park v. Metropolitan Life Ins. Co.*, 457 A.2d 734, 737 (Del. 1983); *Equitable Trust Co. v. Ward*, 48 A.2d 519, 527–28 (Del.Ch.1946).

57. *Hudak v. Procek*, 806 A.2d 140, 146 (Del. 2002); *Adams v. Jankouskas*, 452 A.2d 148, 152 (Del.1982).

58. *Hudak*, 806 A.2d at 146; 1 Pomeroy's Equity Jurisprudence § 166 at 210–11 (5th ed.1941).

ed any kind of waiver or modification of this provision in the Agreement.

Mrs. Fischer had asked for the divorce and, implicitly, was asking for half of the entireties property in accordance with the Agreement she made with Mr. Fischer 16 years before. For Mrs. Fischer to retain the whole of the entireties property would therefore constitute unjust enrichment. By imposing a resulting trust, the Court gives effect to the future transaction to which Mr. and Mrs. Fischer agreed when they executed the Agreement. The estate of Mr. Fischer, therefore, is granted a beneficial interest in one-half of each asset that was formerly held by Mr. and Mrs. Fischer by the entireties, and Mrs. Fisher holds legal title to their interests as a trustee.

## IV. CONCLUSION

The real property, automobiles, County Bank stock and presumably all personalty in the Fischers' residences were held by the entireties. As such, legal title vested solely in Mrs. Fischer upon the death of Mr. Fischer. Nevertheless, in light of the equities of the case, Mrs. Fischer's institution of divorce proceedings against Mr. Fischer, and the plain language of the Agreement, a resulting trust for the benefit of Mr. Fischer's estate is created over one-half of each asset previously held by the entireties. Summary judgment as to these assets is granted as explained herein.

There are genuine issues of material fact yet to be resolved with respect to the $500,000 payment under the Agreement, the ownership of the JMS Account, the provenance of the license plates, and the ownership and provenance of any other items of personalty that were not held by the entireties. Summary judgment as to these assets is denied. In light of these rulings, the Court urges the parties to resolve the remaining issues. If that is not possible, a one-day trial will be held on January 31, 2005, commencing at 9:00 a.m.

IT IS SO ORDERED.