GUARANTEE BANK, a corporation of the State of New Jersey, Defendant Below-Appellant/Cross-Appellee,

v.

MAGNESS CONSTRUCTION CO., a corporation of the State of Delaware, Plaintiff Below-Appellee/Cross-Appellant.

Supreme Court of Delaware.

Submitted: March 18, 1983.

Decided: May 5, 1983.

Max S. Bell, Jr. (argued) of Richards, Layton & Finger, Wilmington, for appellant/cross-appellee.

Charles M. Allmond, III. (argued) and John H. Benge, Jr. of Allmond, Eastburn & Benge, Wilmington, for appellee/cross-appellant.

Before HERRMANN, C.J., and McNEILLY and MOORE, JJ.

McNEILLY, Justice:

This appeal and cross-appeal arise out of a decision of the Court of Chancery which determined the priority of the conflicting claims of Guarantee Bank (Guarantee) and Magness Construction Co. (Magness) to the proceeds of a foreclosure sale of two parcels of land located in Mill Creek Hundred known as "Red Barn". Parcel I (improved parcel) consists of an improved parcel of land on which a restaurant formerly known as the Red Barn sits. Parcel II (unimproved parcel) is an undeveloped lot which sits across the street from Parcel I.

In 1975 Magness held a long term leasehold interest on the two parcels of land involved in this case. At this time, Magness agreed to sell this interest to one Francis Murray. The parties agreed upon a $400,000.00 purchase price with plaintiff agreeing to finance $150,000.00. The parties agreed that Magness would subordinate its purchase money mortgage to the lien of a later mortgage loan secured by Murray or Commercial Investments Corporation (C.I.C.) for certain specified purposes. The parties also agreed that Magness would take back as security a leasehold mortgage on the unimproved parcel (parcel II), and that a purchase money mortgage was to be extended to the improved parcel (parcel I) one year after closing. The relevant agreement provided in part:

> "The [mortgage bond] shall be secured by a leasehold mortgage on Parcel II only. The bond and mortgage for the balance of the consideration shall be in a form customarily employed by Bank of Delaware. The mortgage shall contain an automatic subordination clause providing that the Assignor's mortgage lien will be automatically subordinate and secondary to the lien of any bona fide loan secured by the Assignee in good faith to finance improvements or construction on Parcel I or Parcel II, operation of the restaurant on Parcel I, or the Assignee's equity in Parcel I or Parcel II. The Assignee, at its option, may pay the entire balance on the bond remaining due at any time or any part of such balance, before maturity, without notice to seller and without penalty.

"The Assignee agrees to execute a further leasehold mortgage on or after the expiration of the first year of the said bond extending the lien of the said obligation to Parcel I." [MATERIAL IN BRACKETS ADDED]

On March 24, 1976 the parties went to settlement. Title was taken in the name of C.I.C., and C.I.C. gave Magness a mortgage for $150,000.00 on Parcel II (unimproved land). This mortgage was recorded on March 24, 1976.

The mortgage between Guarantee and C.I.C. was executed on March 22, 1977 and was recorded on March 23, 1977. Such mortgage covered both parcels of land and was taken to secure a note dated March 22, 1976 for the sum of $300,000 given by Francis Murray and his wife. Such monies were apparently loaned to Murray in order to fund his obligations under the original agreement for the sale of the land here in issue. Magness, however, was unaware that Murray had thus financed his down payment.

This $300,000.00 note was in large part unsecured except for the personal guarantees of one Charles Dooner and his wife, Carol Dooner. Such note was subject to demand at three month intervals. When the Dooners refused to guarantee payment at the March, 1977 interval because of Murray's poor financial condition Guarantee agreed to accept a mortgage on the property in question. This mortgage was duly recorded on March 23, 1977, one day before Magness proposed to extend its mortgage to Parcel I (improved land). When C.I.C. refused to execute the extension of Magness's mortgage to Parcel I, Magness filed this lawsuit. Magness impleaded Guarantee in order to challenge the priority of the Guarantee mortgage pursuant to the subordination clause.

While C.I.C. participated in the early stages of this case, it subsequently dropped out and was dismissed by the other parties.

This was because Magness and Guarantee, notwithstanding the dispute as to priority, agreed to foreclose on the property. A subsequent Sheriff's sale was held with the proceeds being placed in escrow pending the outcome of this suit.

On May 21, 1982 Chancellor Marvel held that Magness had a first lien on Parcel II (unimproved parcel) and Guarantee had a first lien on Parcel I (improved land). On July 29, 1982 Chancellor Marvel entered an Order specifying that Magness was entitled to 34% of the escrow fund and Guarantee 66%.

The first issue we address is Magness's contention on cross-appeal that the Court of Chancery erred in finding that Guarantee had priority on Parcel I (improved land). Magness offers three arguments supporting its position.

■ First, Magness argues that by virtue of its original agreement with C.I.C. extending a mortgage to Parcel I a year after settlement and the equitable principle "an agreement to give a mortgage is a mortgage," it had an equitable lien on both properties well before March 24, 1977. This argument is without merit. "Where the obligee's own performance is still in the executory state, specific performance of a contract to make or to accept a loan to be secured by a mortgage will not be specifically enforced." *Osborne on Mortgages,* 2nd Ed. (1970) § 26 at p. 36. C.I.C.'s promise to give a mortgage on Parcel I was by its terms executory and could not have been specifically enforced until March 24, 1977. Hence Magness had no right to an equitable mortgage until March 24, 1977.

■ Magness next contends that it is entitled to priority since Guarantee was not a bona fide purchaser because Guarantee had notice of Magness's mortgage. This argument misconstrues the Delaware statute governing priority of mortgages, 25 *Del.C.* § 2106.[1] As this Court recently stated in

1. 25 *Del.C.* § 2106 provides:
   Priority of mortgage from time of recording. A mortgage, or a conveyance in the nature of a mortgage, of lands or tenements shall have priority according to the time of recording it in the proper office, without re-

*First Mortgage Company of Pennsylvania v. Federal Leasing Corporation,* Del.Supr., 456 A.2d 794 (1982). "... § 2106 is a pure race statute, and as such the time of recording is determinative. The rule is first in time, first in right." In the instant case Guarantee recorded its mortgage on March 23, 1977 one day before Magness was entitled to a mortgage, and, therefore, Guarantee had priority. The fact that Guarantee had notice of a potential mortgage is irrelevant.[2]

■ Magness next contends that Guarantee's mortgage fails because it was without consideration in that it covered an antecedent debt. As the Chancellor stated below that argument also fails:

"At the time of the March, 1977 renewal of Mrs. Murray's note Guarantee Bank did not have to continue extending credit and could have called in the note. However, in exchange for the mortgage Guarantee Bank agreed to make a further extension of its credit, and forebearance to exercise a legal privilege is valid consideration, Corbin on Contracts, § 136 at 579 (1963)."

■ Turning to Parcel II (unimproved parcel) we now address Guarantee's contention on appeal that the Chancellor erred in its ruling that Magness had priority. It is Guarantee's contention that it is entitled to first lien status on Parcel II by reason of the automatic subordination clause in the Magness mortgage which provides:

"Mortgagee, by execution hereof, covenants and agrees that the lien of this mortgage is and shall be subject and subordinate to the lien of any mortgage or mortgages or any replacement or replacements thereof given by Mortgagor herein, its Successors or Assigns, to secure a loan or loans to the Mortgagor herein, its Successors or Assigns, for the purpose of financing improvements or construction

on the lands hereinabove described and/or on lands situate on the Southeasterly side of Farrand Drive on which is presently erected a restaurant facility known as The Red Barn Restaurant; to finance operation of the restaurant presently known as The Red Barn Restaurant hereinabove described, to be known as The Longhorn Ranch, located on premises situate on the Southeasterly side of Farrand Drive; or to finance the Mortgagor's, its Successors or Assigns, equity in the land hereinabove described and/or in the premises on which are presently located the restaurant facilities hereinabove mentioned; or any combination of the same. This subordination shall be self-operating and self-effecting; notwithstanding same, Mortgagee covenants and agrees to execute any instruments required by Mortgagor, its Successors or Assigns, so as to further document the subordination hereinabove expressed in recordable form."

Relying on the language "to finance the Mortgagors, its Successors or Assigns, equity in the land hereinabove described and/or in the premises on which are presently located the restaurant facilities hereinabove mentioned," Guarantee argues that its lien falls within the automatic subordination provision. Magness disagrees arguing that this interpretation is inconsistent with (1) the nature and purpose of an agreement to subrogate a purpose money mortgage, (2) the intention of the parties, and (3) the terms of the agreement itself. It is unnecessary for us to construe the purpose of the agreement or the intention of the parties in that we find that the language of the subordination provision does not apply to loans made on behalf of Murray.

■ In construing the terms of a subordination clause in a purchase money mortgage Delaware law requires such

---

spect to the time of its being sealed and delivered, and shall be a lien from the time of recording it and not before.

**2.** The one situation where notice is relevant to a priority determination is where it is impossi-

ble to determine who in fact was the first to record. *Winchester v. Parm,* Del.Ch., 141 A. 271 (1928).

agreements to be strictly construed where their terms are unambiguous. *Masten Lumber & Supply Company v. Suburban Builders, Inc.,* Del.Super., 269 A.2d 252 (1970). The Magness mortgage clearly states that the mortgages to which the subordination provision applies are mortgages "... given by mortgagor herein, its Successors or Assigns ..." The mortgagor is C.I.C. Nowhere in the mortgage did Magness agree to secure a loan made by Murray. Since Guarantee's loan was to Murray and Murray was not a successor or assignee of C.I.C., the automatic subordination provision does not apply. While we agree with Guarantee that the contract of sale between Magness and Murray would push Guarantee past this threshold issue, this document is simply not relevant to this inquiry. It is the recorded mortgage and its unambiguous terms which control the issue of subrogation.

The remaining issues we address go to the Chancellor's determination that Guarantee was entitled to 66% of the escrow fund and Magness 34%. Both parties contend that the Chancellor erred.

Turning first to Guarantee's claim, it argues that the Chancellor erred in setting interest at 7% for each party and awarding counsel fees of 5% for each party. Guarantee argues that this is error because in the stipulated facts submitted by the parties prior to trial it was agreed that Magness' claim was for $150,000.00 plus 7% interest, without any reference to counsel fee and Guarantee's claim was for $300,000.00 plus 9% interest and 5% counsel fees. According to Guarantee, the Chancellor erred in limiting its interest to 7% and counsel fees to $15,000.00 where the 5% based on principal and interest due at the time of foreclosure would have been approximately $18,266.

When equity takes jurisdiction of a cause and decides that relief shall be granted, the relief, including damages, if any, will be tailored to suit the situation as it exists on the date the relief is granted and the choice of relief is largely a matter of discretion with the trial judge. *Tenny v. Jacobs,* Del.Supr., 240 A.2d 138, 140 (1968); *Lynch v. Vickers,* Del.Supr., 429 A.2d 497, 500 (1981); *Wilmont Homes, Inc. v. Weiler,* Del.Supr., 202 A.2d 576, 580 (1964); *Bullen v. Davies,* 209 A.2d 81, 85 (1965). Given that the parties stipulated to a single sale prior to a determination of priorities, instead of separate sales and that the parties will fully recover the amount of principle they each loaned, we cannot say that the Chancellor erred in fashioning the relief in the manner in which he did.

Implicit in our conclusion just reached is our rejection of Magness's argument that the Chancellor erred in failing to apportion the escrow fund in accordance with the appraised value of each parcel. Given that both parties agreed to a single sale and the property had been twice sold as a whole with no sale price established as to either individual parcel, we cannot say that the Chancellor abused his discretion in rejecting the testimony of valuation and ruling that there should be a pro rata distribution of the fund.

For the above stated reasons, the judgment of the Court of Chancery is

AFFIRMED.