Angelo GALANTINO, and Mary Galantino, Defendants Below, Appellants,

v.

Alessio M. BAFFONE, Jr., and Nancy M. Baffone, Plaintiffs Below, Appellees.

No. 417, 2011.

Supreme Court of Delaware.

Submitted: March 28, 2012.

Decided: April 16, 2012.

---

David E. Matlusky and Brett Bendistis (argued), Esquires, of The Matlusky Firm, LLC, Wilmington, Delaware; for Appellants.

James F. Harker (argued) and Scott T. Earle, Esquires, of Cohen, Seglias, Pallas, Greenhall & Furman, P.C., Wilmington, Delaware; for Appellees.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice:

25 *Del. C.* § 2108 grants priority to a "purchase money mortgage" that satisfies the conditions prescribed by that statute.[1]

---

1. 25 *Del. C.* § 2108 provides:

 If lands or tenements are sold and 1 or more mortgages on the same, or any part thereof, are made by the purchaser to the vendor for securing the purchase money or any part thereof, and if such mortgages are recorded within 5 days after the deed conveying such land or tenements from such vendor to such purchaser shall be recorded, the lien of the mortgages on the lands or tenements or any part thereof shall have preference to and priority over any judg-

The issue presented on this appeal is whether the parol evidence rule requires that a person who claims to hold a "purchase money mortgage" must prove his purchase money mortgage holder status solely by reference to the mortgage instrument itself. The Superior Court answered that question in the affirmative, holding also that to obtain Section 2108 priority, the recorded mortgage instrument must self-declare (either verbatim or by reciting facts that otherwise establish) that it is a purchase money mortgage. We conclude that that is not the law of Delaware and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND [2]

The issue arose in the following way: Angelo and Mary Galantino, the defendants-below, appellants (the "sellers"), owned certain property located at 869 S. DuPont Highway in New Castle (the "property") that is the subject of this foreclosure action. In 2007, the sellers agreed to sell the property to Donna and Warren Brady and Dean Miller (the "buyers") for $1,050,000. The agreement of sale, as initially drafted, (the "original agreement"), called for the buyers to make a $100,000 down payment, and to finance $740,000 of the purchase price with a loan from a third party, to be secured by a mortgage on the property. The sellers agreed to make up the $210,000 difference by taking back a purchase money mortgage from the buyers in that amount. Thus, the buyers would acquire the property subject to two mortgages: a $210,000 purchase money mortgage held by the sellers and a $740,000 mortgage held by the third party. It is undisputed that under this initial arrangement, the sellers agreed to subordinate

their purchase money mortgage—which would otherwise have priority by statute—to the mortgage held by the third-party financing source. But, the original agreement never became effective, because the initial deal fell apart.

Before the sale closed, the buyers learned that the original third-party financing terms were "so onerous" that their counsel advised them not to go forward on that basis. Instead, the buyers' counsel found a different lender—the appellees, Alessio and Nancy Baffone (the "third party lenders"). In the past, the Baffones had been involved in financing other real estate transactions, and in this case, they were willing to provide third party financing on more acceptable terms. The third party lenders insisted, however, that certain modifications to the original agreement of sale would have to be made. Under the agreement as revised (the "revised agreement"), the third party lenders would loan the buyers $550,000, to be secured by a mortgage on the property that would have priority over any other mortgage. In addition, the sellers would increase the amount of their purchase money mortgage from $210,000 to $400,000.

After the parties executed the revised agreement a dispute arose as to whether or not the sellers had agreed to subordinate their $400,000 purchase money mortgage to the third party lenders' $550,000 mortgage. The Galantinos claimed that they never did. Specifically, Mary Galantino testified that she instructed her real estate agent that, because their loan amount would be almost doubled, their purchase money mortgage securing that loan should have priority over the third party lenders' mortgage. The agent,

ment against the mortgagor or any other lien created or suffered by that mortgagor, although such judgment or lien is of a date prior to the mortgages.

**2.** Unless otherwise noted, the facts are as stated in the Superior Court's decision, *Baffone v. Brady*, 2011 WL 2165136 (Del.Super. April 26, 2011).

however, did not recall any such instruction. Nor is there any evidence the sellers took any other steps to assure that their mortgage would have priority. On that issue, the trial court found that, "nothing in the revised agreement chang[ed] the [sellers'] earlier agreement to subordinate their mortgage." [3]

The modifications that the third party lenders insisted upon were written by hand on the original agreement. As thus modified, the agreement was never "re-typed and re-signed." Thereafter, the buyers' counsel conducted the closing of the transaction in two sessions, the first with the buyers and the second with the sellers. Buyers' counsel testified that the sellers "initial[ed] the hand written changes to the [revised] Agreement of Sale," in which "the [sellers'] mortgage was described as a '2nd Mortgage.'" In court, the sellers denied that they initialed those handwritten modifications. They claimed that their initials had been forged, and that they never agreed to subordinate their mortgage to the third party lenders' mortgage.

In all events, the buyers' counsel recorded the buyers' deed and the third party lenders' mortgage on July 5, 2007. Counsel recorded the sellers' mortgage on July 6, the next day. The buyers later defaulted on their mortgage payments. Two years later, the third party lenders sued the buyers in a Superior Court mortgage foreclosure action. In December 2009, the sellers filed a similar foreclosure proceed-

ing, and moved to intervene in the earlier action filed by the third party lenders. [4] The Superior Court permitted the intervention and held an evidentiary hearing to determine the priority of the parties' respective mortgages.

In a Memorandum Opinion issued April 26, 2011, the Superior Court concluded that the third party lenders' mortgage had priority, because it was the first to be recorded and because the sellers' mortgage instrument did not recite, or otherwise establish within its four corners, that it was a purchase money mortgage entitled to priority under Section 2108. The court held that the question of purchase money mortgage status must be "resolved on the basis of the recorded [sellers'] mortgage because resort to extrinsic evidence is foreclosed by the parol evidence [rule]." The Superior Court further found that the sellers' recorded mortgage instrument was "complete unto itself" and "fully integrated," and that "nothing in the [sellers'] mortgage [instrument] ... indicates it is a purchase money mortgage ... [or] identifies the [sellers] as the purchasers [sic]." [5] The trial court held that, because "there is nothing to distinguish the [sellers'] mortgage from the [third party lenders'] mortgage which was recorded the day before [their mortgage]," the sellers' mortgage was not a purchase money mortgage entitled to priority under Section 2108. This appeal followed.

---

**3.** The Galantinos, like the Baffones, were "sophisticated real estate investors, having previously been involved in thirteen real estate transactions." *Baffone,* 2011 WL 2165136 at *2. That fact may have influenced the trial court, in finding that the Galantinos had failed to establish, even by extrinsic evidence, an agreement for their purchase money mortgage to have priority. That finding no longer has relevance, because we ultimately con-

clude that the Galantinos' mortgage has priority as a matter of law.

**4.** A default judgment was entered against the buyers, who did not participate in the litigation.

**5.** It appears that the Superior Court's use of the word "purchasers" was a typographical error, since the Galantinos were the sellers, not the buyers, of the property.

## ANALYSIS

On appeal, the sellers claim that the Superior Court incorrectly applied the parol evidence rule—a doctrine rooted in contract law—to decide what is ultimately an issue of statutory interpretation. The sellers contend that: (i) the parol evidence rule does not apply to a determination of whether a mortgage qualifies as a "purchase money mortgage" under Section 2108; (ii) by relying upon that evidentiary rule, the Superior Court "deviat[ed] from the clear guidelines of 25 Del. C. § 2108" by adding new requirements not found in the statutory text, thereby violating settled principles of statutory interpretation; and (iii) the recorded transactional documents establish, on their face, that the sellers hold a purchase money mortgage having priority over the third party lenders' mortgage.

In response, the third party lenders contend that the trial court applied the correct analytical approach, and properly found that: (i) the sellers' mortgage does not satisfy the statutory requirements for a purchase money mortgage within the four corners of that document; and (ii) as recorded, the sellers' mortgage instrument "fails to provide proper notice" to the public of its purchase money mortgage status.

■ Those arguments raise a legal issue of first impression, namely, what evidence may a court consider in determining whether a mortgage is a "purchase money mortgage" entitled to priority under 25 Del. C. § 2108? We review questions of law, including those that require the interpretation of statutes and contractual terms, de novo.[6]

Our analysis begins with the "default" priority rule, embodied in Delaware's "race statut[ory]" scheme that accords priority to mortgagees on a first-to-file basis.[7] 25 Del. C. § 2108 carves out an exception to that default rule in the case of purchase money mortgages. Section 2108 provides:

> If lands or tenements are sold and 1 or more mortgages on the same, or any part thereof, are made *by the purchaser to the vendor for securing the purchase money* or any part thereof, and if such mortgages are recorded within 5 days after the deed conveying such land or tenements from such vendor to such purchaser shall be recorded, the lien of the mortgages on the lands or tenements or any part thereof *shall have preference to and priority over* any judgment against the mortgagor or any other lien created or suffered by that mortgagor, although such judgment or lien is of a date prior to the mortgages.[8]

By its plain text, Section 2108 gives priority to a purchase money mortgage—even if it is not the first-filed—if three requirements are satisfied. First, the *seller* of the property must provide a loan, secured by the property, to the *buyer* of the property (the "identity requirement"). Second, the mortgage must be granted for the *purpose* of "securing the purchase money" for the property (the "purpose requirement"). And third, the mortgage must be recorded *within five days* after the buyers' deed is recorded (the "timeliness requirement").

In this regard it is important to keep in mind what the statute does not require. Section 2108 does not speak to the issue of how the satisfaction of these three require-

---

**6.** *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.,* 36 A.3d 776, 779 (Del.2012); *Dishmon v. Fucci,* 32 A.3d 338, 341–42 (Del.2011).

**7.** 25 Del. C. § 2106 ("A mortgage ... shall have priority according to the time of recording it in the proper office....").

**8.** Italics added.

ments may be proved. Nowhere does the statute mandate that any or all of those three statutory characteristics must be expressly recited in the recorded mortgage document. Accordingly, if the parol evidence rule is to be the principle that will govern the mode of proving purchase money mortgage status, that proposition must be justified on the basis of common law precedent or public policy. In this case, neither is served by applying the parol evidence rule.

■ The rule adopted by the trial court would, as a practical matter, render it impossible for a mortgagee to establish that its purchase money mortgage *in fact* satisfies the timeliness and identity requirements of Section 2108. Those requirements, by their nature, can only be established by resort to evidence extrinsic to the disputed mortgage document. For example, reference to the recorded deed to the property is necessary to determine whether or not the mortgage on that property was recorded within five days of the recording of the deed of sale, and whether the purchase money mortgage holder was, in fact, the contemporaneous seller of the property. But, under the rule adopted by the Superior Court, any evidence other than the recorded mortgage is proscribed by the parol evidence rule. We disagree with that approach, because the parol evidence rule does not reach the circumstances at bar, and because those circum-

stances do not implicate the concerns which underlie that rule.

■ The parol evidence rule bars the admission of evidence extrinsic to an unambiguous, integrated written contract for the purpose of varying or contradicting the terms of that contract.[9] The policy underlying that rule is cautionary: to avoid upsetting the sanctity of fully integrated written agreements.[10] That rule does not, however, reach a case such as this, where the issue is not what the contract means, but rather which of two competing, fully integrated mortgage agreements has priority under a statute. Where, as here, that is the issue, neither the parol evidence rule nor its underlying policy should preclude a court from considering the core transactional documents—the recorded deed to the property and the recorded mortgages to which the property is subject. The requirement adopted by the trial court—that the putative purchase money mortgage instrument must self-declare facts establishing that status within its four corners—has no basis in either Section 2108 or the policy served by the parol evidence rule.

In these circumstances, the recorded deed and the mortgage instrument at issue are all that are needed to prove that the mortgage *in fact* satisfies the statute's express requirements. Resort to those two documents will not implicate the concerns that drive the parol evidence rule, because

---

**9.** *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del.1997) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."); Restatement of Contracts (Second), § 213, Comment (a) ("[The parol evidence rule] renders inoperative prior written agreements as well as prior oral agreements"); 17A Am.Jur.2d Contracts § 330 ("Where the language of a contract is plain and unambiguous, its meaning should

be determined without reference to extrinsic facts or aids, and it must be enforced as written.").

**10.** 11 Williston on Contracts § 33:1 (4th ed.) ("[The parol evidence rule] seeks to achieve the related goals of insuring that *the contracting parties*, whether as a result of miscommunication, poor memory, fraud, or perjury, *will not vary the terms of their written undertakings*, thereby reducing the potential for litigation.") (italics added).

those instruments will not be offered or considered for the purpose of varying or contradicting the express terms of the recorded mortgage.

The Superior Court relied on *Guarantee Bank v. Magness Construction Co.*[11] as the basis for its ruling that the "parol evidence prohibits [the] court from considering matters outside the [sellers'] mortgage" to determine whether the "[sellers'] mortgage [is] a purchase money mortgage." We conclude that the court's reading of our *Guarantee Bank* decision was overbroad. *Guarantee Bank* held that a *subordination* provision in a purchase money mortgage, in order to be enforceable, must be found within the four corners of the recorded mortgage. That is, an agreement to validly *relinquish* statutory priority must be expressed in the mortgage instrument itself.[12] In this case, the Superior Court extended *Guarantee Bank* to establish the converse proposition—that to *establish* priority under Section 2108, the statutory requirements must also be expressed within the four corners of the recorded mortgage document. But, the latter proposition does not follow from the former. Establishing statutory priority and relinquishing priority are two legally distinct acts that lend themselves to different modes of proof.

The concern that animated *Guarantee Bank*'s rule of "strict" construction of subordination agreements, and its resulting exclusion of parol evidence to validly relinquish priority, was the orderly administration of Delaware's public recording system.[13] That is an important concern, but it is not implicated here. Nor would any sound policy be furthered by extending *Guarantee Bank* to the quite different circumstances presented in this case.

■ Where, as here, establishing—not subordinating—priority is at issue, the recorded deed and mortgage instruments themselves will suffice to provide constructive notice to the public, and proof to a court, of the purchase money priority status of a mortgage. That will not cause any disruption of the orderly administration of the recording system.[14] This specific case exemplifies why. Anyone who examines the recorded deed to the property in this case would learn: (i) the date the deed was recorded; (ii) the identities of the buyers

---

**11.** 462 A.2d 405, 409 (Del.1983) ("It is the recorded mortgage and its unambiguous terms *which control the issue of [subordination].*") (italics added).

**12.** *See also, Masten Lumber & Supply Co. v. Sub. Builders, Inc.,* 269 A.2d 252, 253 (Del.Super.1970) ("*By statute* the purchase money mortgage *occupies a special position* where priority of liens is concerned. There is, however, *no prohibition against subordinating* such a mortgage ... *by a provision of the purchase money mortgage.*") (emphasis added).

**13.** *Guarantee Bank* cites an earlier Superior Court decision as the basis for its holding. That decision, *Masten Lumber, supra,* 269 A.2d at 254, explained that "strict" construction of a subordination clause in a purchase money mortgage was needed, because "[w]e are in an area where precision is not only desirable but necessary.... If liberal con-

struction ... were permitted, a judicial decision would almost always be required to establish priority of liens." In this case, the Superior Court also concluded that any different rule would lead to unnecessary and disruptive litigation: if the court "were to open up this case to consideration of extrinsic evidence, it might open up countless other real estate transactions to challenges" as well. *Baffone v. Brady,* 2011 WL 2165136 at *4 (Del.Super. April 26, 2011).

**14.** *Handler Const. Inc. v. CoreStates Bank, N.A.,* 633 A.2d 356, 366 (Del.1993) ("The Delaware statute reflects a legislative judgment that requiring *constructive notice* by timely recordation in virtually every case ... [which] promotes the reliability and consistency of the mortgage priority system for real property.") (citations omitted) (italics added).

and sellers; (iii) the purchase price of the property; and (iv) the identity of the property being transferred. By next examining the recorded purchase money mortgage for which Section 2108 priority is claimed, that person would also learn that: (v) the mortgage was recorded within five days after the deed was recorded; (vi) the buyer of the property was the mortgagor and the seller was the mortgagee; (vii) the loan amount did not exceed the purchase price of the property; and (viii) the property securing the mortgage was the same property that the seller/mortgagee transferred to the buyer/mortgagor. In short, those two recorded instruments, without more—and without having to resort to extrinsic testimonial or non-recorded documentary evidence—would disclose whether a mortgage satisfies the identity and timeliness requirements of Section 2108. No disruption of the orderly administration of the recording system, or the sanctity of the written agreement at issue (the sellers' mortgage),[15] would result from a court considering those recorded instruments for that limited purpose.

The only requirement of Section 2108 that would not be conclusively established by reference to the recorded deed of sale and mortgage is the purpose requirement, *i.e.*, that the purpose of the mortgage loan was to secure the buyer's purchase of the mortgaged property. That, however, does not create a fatal impediment, because the satisfaction of the requirement is logically inferable—and, as we hold, should be presumed—in all cases where the amount of the loan is less than the purchase price of the property.

■ To summarize, the establishment of purchase money priority status and the

*relinquishment* of that status involve different concerns and, consequently, different modes of proof. Where relinquishing priority status is in issue (as in *Guarantee Bank*), an agreement to subordinate will not necessarily be evidenced by the recorded mortgage instrument itself, except where the text of that instrument contains an express agreement to subordinate. Where the mortgage does not contain any express agreement to subordinate, parol evidence would be required to establish that agreement. For that reason, and to avoid the hazards of reliance upon parol evidence in that context, *Guarantee Bank* requires that any agreement to subordinate a mortgage be made explicit in the recorded mortgage instrument. Otherwise there would be no way (absent parol evidence) to *negate* the normal presumption that would arise from the recorded deed and mortgage, that a disputed mortgage satisfies the Section 2108 requirements.

■ In contrast, where (as here) the issue concerns the *establishment* of priority status, a mortgagee should be able to prove the satisfaction of Section 2108's identity and timeliness requirements by reference to the recorded deed and mortgage instrument. In those circumstances, the mortgagee will be entitled to a judicial presumption that the statute's third requirement—the purpose requirement—is also satisfied.

■ That presumption, however, is not conclusive. It can be overcome, but the burden of rebuttal rests with the party opposing the presumption to plead and prove, as a defense, that the mortgage is not a "purchase money mortgage." If an opposing party is able to present persua-

---

15. The Baffones are not themselves parties to the Galantino mortgage, and thus their intentions are irrelevant to the interpretation of that instrument. Without a subordination provision indicating otherwise, the only fair reading of a recorded mortgage that is silent on priority is that the parties to that contract have agreed that the statutory scheme, including Section 2108, will govern that issue.

sive evidence that a purported purchase money mortgage holder has not, in fact, satisfied the purpose requirement of Section 2108—*i.e.*, by showing that the funds secured by the mortgage were in fact loaned for a purpose other than to finance the buyers' purchase of the property—the presumption can be rebutted, and the mortgage denied Section 2108 priority.[16]

In this case, the recorded deed and purchase money mortgage establish that the sellers' mortgage satisfies, at least *prima facie*, all three requirements of Section 2108.[17] Moreover, the mortgage contains no subordination language that would relinquish priority to the third party lenders. Therefore, the presumption that the sell-ers' mortgage is a purchase money mortgage entitled to statutory priority stands unrebutted. By applying the parol evidence rule to reach a contrary conclusion, the Superior Court erred as a matter of law.

## CONCLUSION

For the above reasons, the judgment of the Superior Court is reversed, and the case is remanded for further proceedings consistent with this Opinion. Jurisdiction is not retained.

---

**16.** Nothing herein is intended to alter the rule, announced in *Guarantee Bank,* that for a subordination agreement to override Section 2108 priority that would otherwise attach, that subordination term must be expressed *in the recorded mortgage document.* 462 A.2d at 409 ("[The agreement of sale] is simply not relevant to this inquiry. It is the recorded mortgage and its unambiguous terms which control the issue of [subordination].").

**17.** The third party lenders do not contest that the purpose requirement is met.