# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Florida Corporation,     Plaintiff, | ) ) ) ) | |
| v. | ) | C.A. No. N14C-04-199 PRW |
| | ) | |
| VANCE A. FUNK, IV and THE LAW OFFICES OF VANCE A. FUNK, a Delaware Professional Association,     Defendants/Third Party     Plaintiffs, | ) ) ) ) ) ) ) | |
| v. | ) | |
| | ) | |
| ANGELO GALANTINO & MARY GALANTINO, Third Party Defendants. | ) ) ) | |

Submitted: April 16, 2015
Decided: April 22, 2015

## MEMORANDUM OPINION
*Upon third party defendants' motion to dismiss and request for sanctions,*
**GRANTED, in PART.**

Bradley P. Lehman, Esquire, Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C., Wilmington, Delaware, Phillip A. Magen, Esquire, (*pro hac vice*), Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C., Philadelphia, Pennsylvania Attorneys for Plaintiff.

Jeffrey M. Weiner, Esquire, Wilmington, Delaware, Attorney for Defendants/Third Party Plaintiffs.

David Matlusky, Esquire, The Matlusky Firm, LLC, Wilmington, Delaware, Attorney for Third Party Defendants.

**WALLACE, J.**

## I.   INTRODUCTION

Defendants/Third Party Plaintiffs, Vance A. Funk, IV, and the Law Offices of Vance A. Funk (collectively, "Funk") brought a third party complaint against Third Party Defendants, Angelo and Mary Galantino (collectively, the "Galantinos") for indemnification and contribution.   The Galantinos have moved to dismiss the complaint on various grounds.   Based on the pleadings and the record of the hearing of this motion, the Motion to Dismiss is **GRANTED** for the reasons set forth more fully below.

## II.   FACTS AND PROCEDURAL BACKGROUND[1]

The events underlying this action began with a 2007 property sale.   The Galantinos sold property in 2007 to Donna and Warren Brady (collectively, the "Buyers").   The Buyers were to acquire the property subject to two mortgages: a purchase money mortgage held by the Galantinos and another mortgage held by a third party lender.   Initially, the Galantinos agreed to subordinate their purchase money mortgage, which otherwise would have statutory priority, to the other lender's mortgage.   A draft sale agreement was prepared.   But that original deal fell through.

---

[1]   Both the Supreme Court and this Court have discussed the facts relevant to this case at length in previous opinions. *See Galantino v. Baffone*, 46 A.3d 1076 (Del. 2012); *Commonwealth Land Title Ins. Co. v. Funk*, 2014 WL 8623183, at \*1-2 (Del. Super. Ct. Dec. 22, 2014).  The Court will recount here only the salient fact in the instant requests.

Alessio and Nancy Baffone (collectively, the "Baffones") then agreed to lend money to the Buyers in exchange for a mortgage with first priority and certain other conditions. The Baffones purchased title insurance from the Plaintiff, Commonwealth Title Land Insurance Company ("Commonwealth") for the transaction. Funk served as the closing agent for the sale pursuant to an Agency Agreement with Commonwealth. Funk modified the draft sale agreement by hand, reflecting the changed conditions. And, according to Funk, the Galantinos initialed the new sale agreement.

Funk conducted the closing in two sessions: the first with the Buyers and the second with the Galantinos. Funk recorded the Baffones' mortgage on July 5, 2007. He recorded the Galantinos' mortgage the next day, on July 6, 2007.

The Buyers eventually defaulted on their mortgage payments, and the Baffones filed a foreclosure action against them. The Galantinos intervened in that foreclosure action, alleging that their purchase money mortgage had priority over the Baffones'.

In August, 2010, a judge of this Court held an evidentiary hearing to determine the priority of the two competing mortgages. At that hearing, the Galantinos claimed they had informed their agent that they would not agree to subordinate their mortgage to the new lenders (the Baffones) under the new conditions. Nothing in the new sale agreement expressly reflected that, however.

The Galantinos also denied that they had initialed the handwritten changes to the original sale agreement. Funk alleges this testimony misrepresents: (1) that the Galantinos' initials were not their own; and (2) that they never agreed to a junior lien position.

The hearing judge subsequently found in April, 2011, that the Baffones' mortgage had first priority. But the Delaware Supreme Court reversed that decision and remanded the proceedings back to this Court. The original judge then found, in August, 2012, that the Galantinos held a purchase money mortgage entitled to priority.

In May, 2013, the Galantinos assigned their mortgage to Commonwealth in exchange for $525,000. The Galantinos and Commonwealth also entered into a settlement agreement, whereby Commonwealth allegedly "absolved [the Galantinos from] all claims related to this action."[2]

On April 23, 2014, Commonwealth then brought a breach of contract, legal malpractice, and indemnification action against Funk. Funk moved to dismiss

---

[2] Third Party Defs.' Mot. Dismiss ¶ 8. Commonwealth, who otherwise takes no position on the Galantinos' motion to dismiss, asserts the agreement between it and the Galantinos in no way obligates Commonwealth to indemnify or defend the Galantinos in this action. *See* Letter to the Hon. Paul. R. Wallace from Bradley P. Lehman, March 2, 2015 (D.I. #33; Trans. I.D. # 56849989).

those claims as time-barred. On December 22, 2014, the Court granted the motion on all but the indemnification claim, finding that that claim was filed timely.[3]

Funk then filed a third party complaint against the Galantinos on January 7, 2015. The Complaint avers Funk is due: indemnification because, according to Funk, he is only secondarily liable to Commonwealth while the Galantinos are primarily liable; contribution pursuant to the Delaware Uniform Contribution Among Tortfeasor's Law[4] ("UCATL"); and contribution as a matter of equity. Funk's theory of liability is that the Galantinos committed "fraud, negligence or misconduct" when they testified at the August 16, 2010 hearing that they never agreed to subordinate their mortgage under the revised deal and that the initialization on the sale agreement was not theirs.[5]

The Galantinos now move to dismiss Funk's indemnification and contribution claims for failure to state a claim under Superior Court Civil Rule 12(b)(6). Specifically, they argue: (1) Funk fails to state a factual or legal basis for either indemnification or contribution; (2) Funk fails to plead a cause of action for negligence or malpractice on their part; (3) Funk fails to articulate any tort, cause of action or "alleged wrongful conduct" for which he can now seek redress from

---

[3]     *See Commonwealth Land Title Ins. Co. v. Funk*, 2012 WL 8623183, at \*5-6 (Del. Super. Ct. Dec. 22, 2014).

[4]     DEL. CODE ANN. tit. 10, §§ 6301 - 6308 (2014).

[5]     *See* Defs./Third Party Pls.' Resp. 2-4.

-5-

them; and (4) in any event, the agreement between the Galantinos and Commonwealth shields them from liability here. They also contend that the complaint is barred by *res judicata* and the applicable three-year statute of limitations.

## III. STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss, the Court must: "(1) accept all well pleaded factual allegations as true; (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim; and (3) draw all reasonable inferences in favor of the non-moving party."[6] The Court will not dismiss a complaint "unless it appears to a certainty that under no set of facts which could be proved to support the claim asserted would the plaintiff be entitled to relief."[7] A complaint shall not be dismissed "unless it is clearly without merit, which may be a matter of law or fact."[8]

Additionally, "where the complainant refers to [an]other proceeding or judgment, and specifically bases his right of action, in whole or in part, on

---

[6] *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[7] *Highland Capital Mgmt., L.P. v. T.C. Grp., LLC*, 2006 WL 2128677, at *2 (Del. Super. Ct. July 27, 2006).

[8] *Dickens v. Brewington-Carr*, 1999 WL 1240910, at *1 (Del. Super Ct. Oct. 9, 1999) (citing *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970)).

something which appears in the record of the prior cause,"[9] the Court may "take judicial notice of the matters appearing in the record in that case without formal proof."[10] In this case, the Court takes judicial notice of the litigation determining the lien priority, the Supreme Court's 2012 opinion,[11] and this Court's August 13, 2012 order.[12]

## IV. DISCUSSION

### A. Indemnification Claim

A right of indemnification must arise from a contractual provision, "although equitable grounds have been recognized."[13] As there is no contractual provision giving rise to an indemnification right between Funk and the Galantinos, Funk must assert some other "cause of action or facts which would entitle him to relief under the theory alleged."[14]

---

[9]     *Gatz Props., LLC v. Preston*, 2014 WL 1725822, at *5 (Del. Super. Ct. Apr. 15, 2014) (citing *Frank v. Wilson & Co.*, 32 A.2d 277, 280 (Del. Ch. 1943)).

[10]     *Id. See also In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006) (holding trial court may properly decide motion to dismiss by considering documents referenced in complaint and may take judicial notice of "matters that are not subject to reasonable dispute").

[11]     *Galantino v. Baffone*, 46 A.3d 1076 (Del. 2012).

[12]     *Baffone v. Galantino*, Del. Super., C.A. No. 09L-07-212, Parkins, J. (Aug. 13, 2012) (ORDER).

[13]     *Am. Ins. Co. v. Material Transit, Inc.*, 446 A.2d 1101, 1104 (Del. Super. Ct. 1982) (finding non-contractual indemnification claim in case at bar must arise from "some form of negligence").

[14]     *Id.*

Funk's third party complaint alleges he is entitled to indemnification because the Galantinos' "conduct . . . was the primary cause of any damage sustained by Commonwealth."[15] Funk alleges nothing further – he sets forth no independent cause of action nor facts entitling him to relief under such theory, which could in turn give rise to an indemnification right.[16]

The closest Funk gets is alleging the Galantinos misrepresented, before the courts, their intent not to subordinate their mortgage and that they had not initialed the sale agreement.[17] He elaborates on this theory in his brief, where he addresses intentional and negligent misrepresentation.[18] If the Court were to view this as an intentional misrepresentation (also known as fraudulent concealment) claim, Funk would have to plead the following elements: "(1) [d]eliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) [t]hat the defendant acted with scienter; (3) [a]n intent to induce *plaintiff's* reliance upon the concealment; (4) [c]ausation; and (5) [d]amages resulting from the concealment."[19]

---

[15]     Compl. ¶ 136.

[16]     *Id.*

[17]     *See* Compl. ¶ 116.

[18]     Defs./Third Party Pls.' Resp. at 4-5.

[19]     *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987) (active concealment of a material fact creates liability for resulting damages) (emphasis added); *Johnson v. Preferred Professional Ins. Co.*, 91 A.3d 994, 1017 (Del. Super. Ct. 2014).

To establish a prima facie case of negligent misrepresentation, a plaintiff must show: "(1) a pecuniary duty to provide accurate information; (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information, and (4) a pecuniary loss caused *by justifiable reliance* upon the false information."[20]

In order to support either misrepresentation theory, Funk must plead that he relied upon false or concealed information. Yet, even drawing reasonable inferences in Funk's favor, the Court cannot find that Funk's own action—recording the Galantinos' mortgage one day after the Baffones' mortgage—or inaction—failing to have subordination language explicitly written into the sale agreement—was the product of his reliance on some misrepresentation by the Galantinos either at closing or during their later testimony.

The Galantinos argue further that whether their testimony at the hearing misrepresented their original intentions at the closing is irrelevant—the Supreme Court found that the Galantinos' mortgage had priority as a matter of law.[21] Thus, in their view, even if Funk incorrectly believed the Galantinos agreed to

---

[20]    *Smith v. Peninsula Adjusting Co.*, 2011 WL 2791252, at *3 (Del. Super. Ct. June 16, 2011) (quotations omitted) (emphasis added).

[21]    *See Galantino v. Baffone*, 46 A.3d 1076, 1079 n.3 (Del. 2012) (holding the trial court's finding "that the Galantinos had failed to establish, even by extrinsic evidence, an agreement for their purchase money mortgage to have priority . . . no longer ha[d] relevance, because [it] ultimately conclude[d] that the Galantinos' mortgage has priority as a matter of law").

subordinate their mortgage, this issue is moot because the Galantinos' mortgage was not, as a matter of law, subordinate.

Because Funk fails to plead causation and justifiable reliance—key elements of both intentional and misrepresentation claims—the Court cannot find that he has sufficiently pled a theory of relief giving rise to an indemnification right here. Moreover, given Supreme Court's finding that the Galantinos held a purchase money mortgage, Funk fails to show how Commonwealth's damages resulted from the Galantinos' conduct rather than his own. Therefore, even drawing all reasonable inferences in Funk's favor, no well-pled theory of relief supports his indemnification claim. Consequently, it must be dismissed.

### B. Contribution Claims

Funk's contribution claims must also be dismissed. A right to contribution in Delaware is created by statute.[22] For a contribution action to lie, those accountable must be joint tortfeasors who share a "common liability" to the injured party.[23] Even if the Court were to accept Funk's vague allegations of "fraud,

---

[22] *See, e.g., Youell v. Maddox*, 692 F. Supp. 343, 349 (D. Del. 1988) (citing DEL. CODE ANN. tit. 10, §§ 6301 - 6308). Courts have interpreted the UCATL as "likely best read as codifying a clear approach to contribution to appl[y] to all torts, be they legal or equitable, absent another statute more clearly covering the subject." *Hampshire Grp., Ltd. v. Kuttner*, 2010 WL 2739995, at *54 n.450 (Del. Ch. July 12, 2010).

[23] *See* § 6301 ("'joint tortfeasors' means 2 or more persons jointly or severally liable in tort for the same injury to person or property); § 6302(a) ("The right of contribution exists among joint tortfeasors."); *Youell*, 692 F. Supp. at 350. *See also Levy v. HLI Operating Co.*, 924 A.2d 210, 220 (Del. Ch. 2007) (equitable right of contribution in insurance context requires showing

-10-

negligence or misconduct"[24] as well-pled, the Court fails to discern from the third party complaint facts sufficient to support a showing that the Galantinos and Funk are joint tortfeasors. Funk does not plead how the Galantinos' 2010 testimony is causally linked with or in any way affected Funk's actions in 2007 in closing the deal.[25] Thus, the complaint does not state a proper ground for entitlement to contribution from a joint tortfeasor.[26] Funk pleads no theory of common liability between his and the Galantinos' conduct. So Funk fails, also, to state a proper claim for statutory or equitable contribution.

## C. Request for Sanctions and Attorney's Fees

The Galantinos also seek attorney's fees and sanctions.[27] They contend the third party complaint was filed to "harass, annoy, and burden the Galantinos, and to prolong litigation that has long since concluded."[28] The Galantinos cite no authority permitting the Court to award fees or impose sanctions on this basis.[29]

---

of "concurrent obligations . . . to same entities, and that the obligors essentially insured the same interests and the same risks").

[24] Defs./Third Party Pls.' Resp. 4.

[25] *See, e.g.*, *In re Wayport, Inc. Litig.*, 76 A.3d 296, 325 (Del. Ch. 2013) ("And the fraudulent misrepresentation must actually cause harm.").

[26] *Am. Ins. Co. v. Material Transit, Inc.*, 446 A.2d 1101, 1105 (Del. Super. Ct. 1982).

[27] Third Party Defs.' Mot. to Dismiss ¶9.

[28] *Id.* at ¶9.

[29] The Galantinos cite a Delaware Supreme Court case upholding the Court of Chancery's "broad" "discretion . . . in fixing the amount of attorneys' fees to be awarded." *Kaung v. Cole*

Even if the Court were to address this under Superior Court Civil Rule 11, the sanctions request was not made apart from the Galantinos' other entreaties, does not describe the "specific conduct" alleged to be violative of that rule, and does not appear to have afforded Funk the Rule's required 21-day "safe harbor" period.[30] Consequently, the Galantinos' request for fees and sanctions is **DENIED.**

Having found that the claims for indemnification and contribution are not sufficiently pled, the Court need not address the Galantinos' other grounds for dismissal. The motion to dismiss is **GRANTED,** and the third party complaint is **DISMISSED, with prejudice.**

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*
**PAUL R. WALLACE, JUDGE**

Original to Prothonotary
cc:  All counsel via File & Serve

---

*Nat'l Corp.*, 884 A.2d 500, 506 (Del. 2005). But, a court of law does not award attorney's fees absent a permissive statutory provision, procedural rule, or contractual language. *Petition of State*, 708 A.2d 983, 989 (Del. 1998) ("[U]nder the American Rule . . . a court of law will not award attorney's fees unless a statute, contract or procedural rule makes the award explicit."). The Galantinos incant no such statute or procedural rule authorizing this Court to award attorney's fees in this action.

[30]    *See* Del. Super. Ct. Civ. R. 11 ("A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b) . . . . [The] motion shall not be filed with or presented to the Court unless, within 21 days after service of the motion . . . the challenged . . . allegation is not withdrawn or appropriately corrected.")